# KIER *v.* STATE

[No. 218, September Term, 1957.]

514

*Decided May 1, 1958.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*David N. Bates* and *William H. Murphy* for the appellant.

*Charles B. Reeves, Jr., Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Frank H. Newell, III, State's Attorney for Baltimore County, Douglas Bottom, Assistant State's Attorney,* and *Samuel W. Barrick, State's Attorney for Frederick County,* on the brief, for the appellee.

GRAY, J., by special assignment, delivered the opinion of the Court.

The appellant was convicted of murder in the first degree and sentenced to death by the Circuit Court for Frederick County, Schnauffer and Anderson, JJ., sitting without a jury. The case had been removed to Frederick County from Baltimore County after the cause had been remanded by this court in *Kier v. State,* 213 Md. 556.

Counsel for the appellant have raised no question either in their brief or in argument with respect to any alleged errors on the part of the trial court in ruling on the evidence. A review of the record discloses no such error; indeed, all objections to evidence about which there might have been substantial question were resolved in favor of the appellant. The sole question urged on behalf of the appellant is that the evidence before the trial court did not justify a verdict of first degree murder.

The responsibility of this court in a criminal appeal is quite limited. Rule 741 c, *Appeal* provides in part as follows:

> "Upon appeal the Court of Appeals may review upon both the law and the evidence to determine whether in law the evidence is sufficient to sustain the conviction, but the verdict of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

It is the duty of this court on an appeal thus presented to carefully review the record and to evaluate the evidence to see whether there is evidence which, if believed by the court below, together with all proper inferences from the facts thus

established, would have justified the trial court in its verdict of guilty.

This court is not called upon to determine whether its members are convinced beyond a reasonable doubt of the guilt of the accused. This principle has been so fully and so recently considered by this court that further detailed discussion thereof is unnecessary and undesirable. See *Edwards v. State*, 198 Md. 132, 151; *Shelton v. State*, 198 Md. 405; *Estep v. State*, 199 Md. 308; *Berry v. State*, 202 Md. 62, 67; and *Chisley v. State*, 202 Md. 87.

The victim of the murder of which the appellant was convicted was a woman who lived with her husband on Charles Street Avenue near Towson. She had gone in her Chrysler automobile to visit her daughter during the forenoon of the day of her death and left her daughter's to return home about 1:15 that afternoon. Her husband returned to their home about 5:00 P. M. and found his wife dead, her body sprawled on the living room floor. She had been almost entirely disrobed. Much blood was lying about and she had obviously been brutally beaten. There were many bruises and lacerations about her face, back of her head, and other parts of her body. There were two wounds, one in her throat and the other in her chest extending some seven inches through the chest cavity to the heart, which apparently had been inflicted with a butcher knife found under her thigh. Either of these wounds would have been fatal within a very few minutes. Entirely aside from admissions made by the appellant to the police and a confession to the witness, Washington, there are clearly established facts which place the appellant at the scene of the crime after the decedent returned to her home. On the previous day, the appellant had appeared at the home of a Mrs. Williams, a neighbor of the decedent, and sought employment. He had furnished Mrs. Williams with his name and address which she recorded on a memorandum. She told him that she would consult her husband and inform the appellant whether his services were desired. The appellant appeared again at the Williams' home the next day (the day on which the murder occurred) and was informed by Mrs. Williams that his services would not be needed. The

coat which the appellant conceded to be his was found by the police near the house where the crime occurred and only a few feet from one of its doors. A fingerprint of the appellant was found on the decedent's automobile when it was picked up a short distance from the appellant's home.

The written statement made by the accused to the police and admitted in evidence without objection did not admit that he had participated in the murder, but established the fact that the appellant was in the house where the crime was committed, had his hands on a sword and scabbard with which some of the injuries to the decedent could well have been inflicted, got blood on his hands which he washed off before leaving the house and that he took the keys to the decedent's automobile from her purse on the kitchen table and then left the house carefully, wiping his fingerprints from the door knobs but dropping his coat in his hurry to get away. The statement then indicates that he took the decedent's automobile from her garage and drove in a roundabout way to a point near his home where he parked the automobile, and that after going home he carefully bathed himself, washed out the tub and changed to fresh underwear, storing his used garments in a closet, whence they were later recovered and found to have stains of human blood. It must be noted that nowhere in this statement is there any confession that the defendant murdered the deceased. However, his explanation of approaching the house, observing the body of a murdered woman on the floor and then entering the building through open doors might well have taxed the credulity of the trial court. This court has had occasion to observe in *Berry v. State*, 202 Md. 62, 67, that "The trier of facts in a criminal case is enjoined by law to give due force to the presumption of innocence, and then to proceed cautiously in weighing the evidence; but he is not commanded to be naive and to believe without scrutiny every glib suggestion or far-fetched fairy tale whether emanating from State or defense. An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense."

The defendant is further connected with the crime by the testimony of Washington, who was an inmate of the Towson

jail at the time the accused was incarcerated there. According to Washington he and the accused were engaged in casual conversation. During the course of this conversation the appellant said "that he did it, but it was for the police to find out". What the appellant was talking about becomes clear in the concluding sentence of Washington's testimony at the top of page 67 of the extract. "He said the lady came in and she grabbed him and hollered. He said he hit her, and he didn't describe any instrument or anything used in the slaying—he didn't exactly tell me that he used any instruments in the slaying of this lady, Mrs. Bopst".

Counsel for the defendant urged that the testimony of Washington should be received and considered only with great caution. The colloquies between the trial court and defense counsel indicate that it was contended that Washington was a spy planted by the police and that he merely was a part of the prosecution machinery. The record is completely void of any adequate evidence to sustain this contention. He was serving a sentence at the time of his conversation with the accused and he may have felt that he would gain some advantage by bringing admissions by the appellant to the attention of the police. However, the trial court had the witness before them and were better able to judge the weight to be accorded the testimony of this witness than is this court. The trial court was certainly justified in giving to this admission such weight as they thought the credibility of the witness justified.

This court has no difficulty in holding that there was ample evidence before the trial court to justify that court's conclusion that the appellant participated in the murder of Mrs. Bopst.

The remaining question to be considered is whether a verdict of murder in the first degree was justified. Section 407 of Article 27 of the Maryland Code (1957 Edition) provides:

> "All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree."

Section 410 of the same Article provides as follows:

"All murder which shall be committed in the perpetration of, or attempt to perpetrate, any rape, sodomy, mayhem, robbery, burglary, or in the escape or attempt to escape from the Maryland Penitentiary, the house of correction, the Baltimore City jail, or from any jail or penal institution in any of the counties of this State, shall be murder in the first degree."

The state contends that the murder in this case occurred in the perpetration of both robbery and rape or the attempt to do so, and hence, under the definition of Section 410, it automatically becomes murder in the first degree.

It will be noted that the only evidence tending to show that the appellant entered the Bopst home in an attempt to commit a robbery is that of the witness, Washington, who testified: "* * * after passing this house he said he seen the door was open and he went in. He entered the house and found there wasn't anyone in the house at the time he went in, and so he went to this room to rob it,—rob the house." We think it is clear that even if this testimony was believed implicitly by the trial court it would not have justified a conviction of first degree murder occurring in the perpetration of robbery. Robbery has to do with taking property from a *person* by means of actual or implied force. 2 *Wharton, Criminal Law and Procedure*, Sec. 545, p. 241. It differs entirely from the crime of burglary which has to do with breaking and entering a building with the intention to commit a felony therein. If Washington was quoting the appellant accurately it was not his purpose or intention to commit an assault upon Mrs. Bopst in order to take property away from her but rather to steal articles from the empty home or at least a home he thought was empty. We conclude that a first-degree verdict could not be predicated upon a finding that the murder occurred during the perpetration of a robbery. A closer question is presented as to whether or not a first degree verdict is justified under the provisions of Section 410 with respect to the perpetration of a burglary. The crime was committed in broad daylight and therefore

could not involve an attempt to commit common law burglary. 2 *Wharton, Criminal Law and Procedure,* Sec. 406, p. 24. The trial court might well have drawn from the testimony the inference that the appellant broke into the Bopst home with the intention to commit a felony therein, to wit: to steal property in violation of Section 32, Article 27 of the Code (1957 Edition). Is a murder committed in the perpetration of statutory burglary under this section of the Code first degree murder? This question apparently has not been decided by this court and we find it unnecessary to determine the matter at this time, although this statute has been held by this court not to constitute burglary. *Bowser v. State,* 136 Md. 342, 345. The testimony in this case clearly justified the court below in a first degree verdict either because the crime was committed in the perpetration of an attempted rape under Sec. 410 or because it was deliberate and premeditated under Sec. 407. The evidence showed that the body of Mrs. Bopst was found nearly nude and that she was clutching across her chest a window curtain or other drapery in what would seem to have been an obvious attempt to screen her body from her assailant. She was dealt many, many blows about the face and on the back of the head. Her arm and hand were badly bruised as she apparently fought to ward off the hail of blows from her assailant. The disrobed condition of the victim, the posture of the body on the floor and the savage thrust of the two fatal blows all point to the commission of a sex crime and the trial court was amply justified by the evidence in concluding that the deceased lost her life while the defendant was attempting to commit the crime of rape. This grim picture is completely foreign to the contention made by the appellant in his statement to witness Washington that he was seized by this small woman when she surprised him in her home and that he struck her in an effort to get away.

Even if the assault with intent to rape was not in this case, there would still be evidence to justify the trial court in reaching the conclusion, as they did, that the murder was deliberate and premeditated under the provisions of Section 407. As the court said in *Chisley v. State,* 202 Md. 87, 106: "It is

not necessary that deliberation and premeditation shall have been conceived or have existed for any particular length of time before the killing. Their existence must be judged from the facts of the case." In that case this court held that the delay between firing a first and a second shot was such evidence as justified a finding of deliberation and premeditation. See also *Faulcon v. State,* 211 Md. 249. This court said in the recent case of *Elliott v. State,* 215 Md. 152, 160: "To be 'wilful' there must be a specific purpose and design to kill. To be 'deliberate' there must be full and conscious knowledge of the purpose to kill. To be 'premeditated' the design must have preceded the killing by a sufficient length of time, even though short, to be deliberate."

An ornamental iron horse and a sword in its scabbard, both of which objects were marked with human blood, were found near the body. The brutal manner in which the victim was beaten about the face and head with these or other objects indicates a protracted period during which the assault continued. Then the assailant procured or produced a butcher knife which he plunged into her body not once but twice. There was ample evidence to justify the trial court in its conclusion that the action of the appellant was wilful, that it was deliberate, and that it was premeditated.

The court is irresistibly driven to the conclusion that there was sufficient evidence to justify the trial court in arriving at its verdict of murder in the first degree. Accordingly the judgment and sentence will be affirmed.

*Judgment affirmed, with costs.*