JOHN McLAUGHLIN *v.* STATE OF
MARYLAND

[No. 88, September Term, 1967.]

516

*Decided April 3, 1968.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Morris Lee Kaplan,* with whom was *Michael Lee Kaplan* on the brief, for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Raymond, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, John McLaughlin, was tried in the Criminal Court of Baltimore by a jury, Judge J. Gilbert Prendergast presiding, upon three separate indictments, charging him with riot, breaking and entering, and malicious destruction of property. The indictments came about as a result of the penitentiary riot that occurred on July 8, 1966. He was found guilty by the jury on the indictment charging him with malicious destruction of property and not guilty on each of the other two indictments. He was sentenced to the Maryland Penitentiary for the term of one year, to run consecutively with the term he is now serving, and was fined $500.00.

On July 8, 1966, at approximately 11:30 a.m., several hundred prisoners incarcerated in the Maryland Penitentiary began to riot. Order was not restored in the institution until approximately 4:30 p.m. During the course of the riot considerable damage was done to the institution and the commissary was looted and set afire. Fires were also started in the industrial

shop building which is designated as "G" building, in the Print and Tag shop, and in the institution's laundry. While the fires were being fought by the Baltimore City Fire Department approximately two hundred inmates were seen running and milling about the prison yards coming out of the dining hall and commissary. They were screaming and yelling, hurling missiles and smashing windows. The warden of the penitentiary put the institution's riot plan in effect and the prison guards were reinforced by the Baltimore City Police Department and their K-9 Squad. While the riot was in progress the inmates attempted to storm the institution's power house, but were thwarted by the guards and police. The door to the commissary was battered down and its entire contents were taken by the inmates during the looting of that building. The damages to the institution and losses from the commissary were estimated at $750,000.

Appellant was positively identified by eight witnesses testifying on behalf of the State as one of the principal participants in the riot. They were correctional officers and other employees of the institution personnel, who testified that appellant was one of the leaders, going from building to building, armed with a piece of wood, smashing windows, encouraging the others on, and was engaged in the attempt to storm the power house as well as the looting of the commissary.

Appellant took the stand in his own behalf and denied any participation in the riot and disturbance on July 8, 1966. He stated he was only an observer and could not get out of the prison yard during the commotion because the doors were locked. He further testified he went into the midst of the milling inmates to protect Father Toby, the prison Chaplain, and into the commissary to rescue Assistant Warden Jordan from the fire. Eight witnesses testified on behalf of the appellant. Six of these witnesses were inmates of the penitentiary. The other two witnesses were Father Toby and a Correctional officer.

Appellant raises ten contentions on appeal:

1. That the lower court should have granted appellant's motion for a change of venue.
2. That the court should have granted appellant's motion to dismiss the indictment filed in proper person.

3. That the court erred in granting the State's motion for consolidation of the three cases against appellant over his objection.
4. That the court erred in admitting the photographs into evidence (State's Exhibits 1a through 2 and A a through B b).
5. That the court erred in refusing to permit defense counsel to interrogate defense witnesses as to their credibility.
6. That the court erred in refusing to permit defense counsel to interrogate Isaac Jacobs in reference to the credibility of the State's witness, Robert Jordan.
7. That the court erred in its instructions to the jury in the malicious destruction of property indictment.
8. That the court erred in refusing to grant appellant's motion for judgment of acquittal.
9. That the verdict was against the sufficiency of the evidence.
10. That the court erred in refusing appellant a copy of the transcript at the State's expense for the purpose of arguing his motion for a new trial.

I

Appellant's first contention is that the court should have granted his motion for a change of venue since he could not get a fair and impartial trial in Baltimore City because the local newspapers and other news media had been full of items and stories concerning the alleged riot.

The question of whether a non-capital criminal case should be removed to another jurisdiction is one which rests within the trial court's discretion. Maryland Constitution, Art. IV, Sec. 8; Maryland Rules 542 (1) and 738 (b). However, the trial court's decision is reviewable on appeal for a determination of whether there has been an abuse of discretion. *Seidman v. State,* 230 Md. 305, 187 A. 2d 109 (1962); *Benton v. State,* 1 Md. 647, 652, 232 A. 2d 541 (1967).

The question before the court is whether the trial court abused its discretion in refusing the requested removal. The cases in this State hold that newspaper disclosures standing alone do not support a defendant's suggestion that such disclosures deny

him a fair trial. *Gray v. State,* 224 Md. 308, 316, 167 A. 2d 865 (1961) and cases cited.

The lower court permitted the appellant to make his motion for removal orally and to take the stand and testify in support of his motion. Appellant testified that he was one of thirty men sent to the City Jail on July 10, 1966, as one of the ringleaders of the riot which had occurred on July 8, 1966, and that this had appeared in news media. He also stated that he had noticed in a newspaper where it said Saturday that the trials were to begin Monday of the alleged ringleaders, and he felt that it was unjust that the tab of ringleader was placed upon them. He further testified that the Morning Sun of July 11, 1966 gave the thirty names of the men sent to the City Jail, of whom he was one, and that the article stated that the men were sent there by authority of Vernon L. Peppersack, Commissioner of Correction, who stated these men were the ringleaders of the riot.

The court in denying the motion stated that appellant had given no reason why he could not get a fair and impartial trial before the court. As to adverse publicity, the court said that he was of the opinion that the publicity had been distinctly favorable to the defendants in the alleged riot cases because many of them had been tried and found not guilty by a jury, some by the court, and only one man convicted so far. Also, a great many cases had been dismissed by the State and the publicity was all favorable to the defense.

The appellant chose to be tried by a jury and the questions and answers on voir dire as submitted by his counsel adequately covered the matter of freedom from prejudice, and, in particular, adverse news publicity.

We, therefore, must conclude from this record that the trial judge did not abuse his discretion in denying the motion for removal.

## II

Appellant contends that the court should have granted the motion to dismiss the indictment filed in proper person. The motion sets forth no grounds that can be understood, save the fact that he did not receive a preliminary hearing. This contention is groundless. Under Maryland law a preliminary hearing is not required. *Cherrix v. Warden,* 1 Md. App. 65, 68, 227 A. 2d

50 (1967) and cases cited. Here, the case was submitted directly to the Grand Jury.

### III

Appellant's third contention is that the court erred in granting the State's motion for consolidation of the three cases against him over his objection. He argues that the crimes with which he is charged could not have "conceivably" been joined in one indictment without a misjoinder of counts. While appellant cites no authority to support his contention, the question raised is an interesting one.

Here, appellant was charged with three separate offenses, riot, breaking and entering, and malicious destruction of property. All three offenses grew out of the same transaction, the riot in the Maryland Penitentiary on July 8, 1966; all involved the same facts, occurred at or about the same time, on the same date and at the same place. Moreover, the crimes of malicious destruction of property and breaking and entering were acts of the penitentiary inmates which constituted part of the riot.

Maryland Rule 734 provides that: "The court may order two or more indictments to be tried together, if the offenses, and the defendants, if there be more than one, could have been joined in a single indictment." The purpose is to save the time and expense of separate trials under the circumstances named in the Rule, if the trial court, in its discretion, deems a joint trial proper. Maryland Rule 716 a. provides: "Two or more offenses may be charged in the same indictment."

Since the trial judge concluded that neither the accused nor State would be prejudiced by a joinder for trial, as provided in Maryland Rule 735, we find that the trial judge properly ordered a joinder for trial of the three indictments under which appellant was charged. The appellant could have been charged with all of the offenses in one indictment by using separate counts under the provisions of Rule 716 a. and Rule 734, both supra; since under the facts herein the offenses are of the same general nature, form part of the development of the same transaction, and permit the same mode of trial. 12 Maryland Law Encyclopedia, Sec. 33, p. 204; *Lewis v. State,* 235 Md. 588, 202 A. 2d 370. Moreover, appellant was acquitted of the two more serious offenses and convicted of the lesser, malicious de-

struction of property, which would tend to negate any claim of prejudice arising from the joinder for trial of the three indictments.

## IV

Appellant next contends that the photographs showing the damage to the penitentiary were improperly admitted in evidence. This contention is totally devoid of merit.

The photographer who took the photographs testified that each of them truly represented the scene as he saw it at the time he took them.

While the rule is that the admissibility of photographs is ordinarily left to the discretion of the trial court, there must be competent extrinsic evidence showing the photograph to be a true representation of the scene or object which it purports to represent at the time when the appearance of such scene or object is relevant to the inquiry in connection with which the photograph is offered. *Sisk v. State,* 232 Md. 155, 158, 192 A. 2d 108 (1963) and cases cited. *Sisk v. State,* 236 Md. 589, 204 A. 2d 684 (1964).

Here, the evidence shows that the photographs were an accurate representation of the scene at the time they were taken, which was two days after the riot. Furthermore, appellant's argument that someone other than the photographer had made entries upon the back of the photographs is devoid of merit since, after identifying each photograph, the photographer testified that the notation made on the back of each photograph stated exactly what he said it represented.

## V

Appellant's fifth contention is that the court erred in refusing to permit defense counsel to interrogate defense witnesses as to their credibility.

Appellant produced as witnesses Clarence Hardy and James W. Campbell who testified in his behalf. These two witnesses, who were inmates of the Maryland Penitentiary, were cross-examined by the State as to their criminal records to reflect upon their credibility. Counsel for appellant then attempted on re-direct examination to question the witnesses Hardy and Campbell as to whether they had been indicted for crimes as a result of the riot at the penitentiary. The State objected and

the objection was sustained. Appellant claims that he should have been able to show that these two inmates were not indicted as participants in the riot as evidence to sustain their character as to credibility.

We find no merit in this contention. The question is not whether these witnesses participated in an unlawful act, but whether the appellant did.

· The general rule is where the character of the witness is impeached by matters brought out on cross-examination, or by evidence aliunde as to character, the witness may be sustained by evidence of good character, but it must, in either case, relate to the character of the witness for truth. *Vernon v. Tucker*, 30 Md. 456, 461 (1869).

The evidence which appellant attempted to offer did not relate to the witnesses' character for truth and veracity, but only as to whether they had been indicted for the same offenses as the appellant.

Furthermore, the mere fact that a witness has been indicted would not affect his credibility and is not admissible in evidence to impeach him. *Kremen v. Rubin*, 139 Md. 682, 116 A. 640 (1922). Nor may an accusation, as distinguished from a conviction, be proved as a means of impeaching the credibility of a witness. *Niemoth v. State*, 160 Md. 544, 557, 154 A. 66 (1931). Since the fact that a witness has been indicted, but not convicted, would not affect his credibility for truth and veracity and is inadmissible, the fact that he had not been indicted would likewise be inadmissible as bearing on his truth and veracity.

## VI

There is no merit in this contention. Defense counsel sought to ask the witness, Isaac Jacobs, if he had been assaulted by Officer Robert Jordan on July 29th or 30th, 1966, some 22 days after the riot. The question was purportedly asked for the purpose of impeaching the witness Jordan and was clearly inadmissible.

A witness may not be impeached by testimony or cross-examination in respect to facts that are collateral, irrelevant or immaterial to the issues of the case. *Harris v. State*, 237 Md.

299, 302, 206 A. 2d 254 (1965) ; *Sanders v. State,* 1 Md. App. 630, 232 A. 2d 555 (1967).

The attempt by the appellant to show that Officer Jordan assaulted inmate Jacobs 22 days after the date of the alleged offense was an attempt to produce evidence completely irrelevant and immaterial to the trial of the appellant.

## VII

Appellant complains that the court erred in its instructions to the jury on the malicious destruction of property indictment.

There is no merit to this contention. A careful review of the trial court's instructions shows that the court's comments, both as to State and defense witnesses, were fair and impartial. Appellant's complaint, which misquotes the court's comments in his brief, is apparently based on an alleged failure by the court to comment on the testimony of all the appellant's witnesses. The court carefully outlined the conflicting testimony on the part of the State and the appellant, and told the jury that in making a finding they must weigh the evidence. No more was required. While any summation of the evidence by the trial court must be made fairly and impartially, this has never been taken to mean that the trial court must comment on all of the evidence in the case *Coby v. State,* 225 Md. 293, 296-97, 170 A. 2d 199 (1961).

## VIII AND IX

Appellant's eighth and ninth contentions may be considered together.

In reviewing the trial court's denial of a motion for judgment of acquittal renewed at the conclusion of the case, the review becomes a determination of the sufficiency of the evidence. *Lucas v. State,* 2 Md. App. 590, 592, 235 A. 2d 780, 781 (1967) ; *Loker v. State,* 2 Md. App. 1, 25, 233 A. 2d 342 (1967) ; *McGlothlin v. State,* 1 Md. App. 256, 261, 229 A. 2d 428 (1967).

When a case is tried by a jury, an appellate court does not weigh the evidence presented to the jury, but only determines its sufficiency to take the case to the jury. *Ramsey v. State,* 239 Md. 561, 566-67, 212 A. 2d 319 (1965) ; *Loker v. State, supra; Brown v. State,* 1 Md. App. 571, 576, 232 A. 2d 261 (1967).

There was ample evidence on behalf of the State to submit

the case to the jury. The State produced ten witnesses on direct examination and four on rebuttal, at least six of whom testified that they observed appellant as an active participant in the riotous proceedings at the penitentiary on July 8, 1966. He was observed by them leading a group of rioters with a three-foot piece of wood in his hand, breaking and smashing windows, attempting to break into the power house and commissary, and was engaged in the looting that took place in the commissary.

Appellant contends that the testimony of the State's witnesses was directly contradicted by the testimony of the witnesses for the defense, who testified that they did not observe appellant break any windows or participate in any way in the riot. In his own testimony, he testified that he took no part in the riot, that he was protecting Father Toby in the yard and only entered the commissary to save Officer Jordan from the fire.

Where testimony is conflicting, the weight and credibility of the witnesses' testimony is for the jury to determine.

In order to overturn a judgment entered on a verdict of a jury for insufficiency of the evidence, it is necessary to show that there was no legally sufficient evidence or inferences drawable therefrom on which the jury could find the defendant guilty beyond a reasonable doubt. *Boone v. State,* 2 Md. App. 80, 233 A. 2d 476, 493 (1967); *Loker v. State, supra.* Here, we find no such showing and the evidence was sufficient to convict.

Appellant also contends that the court should have granted his motion as he could not have been convicted of malicious destruction of property because the indictment places the ownership of the property destroyed in the State of Maryland instead of in another individual or individuals as required by the statute. There is no such requirement in the statute. Article 27, Sec. 111, Maryland Code (1957) provides: "Any person who shall wilfully and maliciously destroy * * * any real or personal property of *another* (emphasis supplied) shall be deemed guilty of a misdemeanor. * * *" The property destroyed was the property of the penitentiary and was owned by the State of Maryland. The indictment, as drawn, conforms to the statute.

## X

Appellant lastly complains that the trial court erred in deny-

ing him a copy of a transcript of the trial at the State's expense to be used for the purpose of arguing his motion for a new trial. He alleges that the refusal by the trial court to grant him a copy for this purpose amounted to a denial of due process of law. A transcript of the testimony was furnished appellant for this appeal.

Transcripts for the purpose of arguing a motion for a new trial are no longer required by the Supreme Bench of Baltimore, and a transcript need not be furnished without a showing of how it could serve a useful purpose.

Appellant makes no showing as to his need to have the transcript to argue his motion for a new trial, save that the testimony was voluminous. Since he waited until the day of the hearing on the motion to request the transcript, we deem this an inadequate reason. *Brown v. State, supra.* There was no denial of due process.

*Judgment affirmed.*