# JAMES F. CARROLL *v.* STATE OF MARYLAND

[No. 216, September Term, 1970.]

*Decided March 15, 1971.*

The cause was argued before Murphy, C.J., and Anderson and Orth, JJ.

*William H. Murphy, Jr.,* for appellant.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City,* and *James*

B. *Dudley, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

James F. Carroll killed Wendell Lee. The Grand Jury, presenting that the homicide was felonious, indicted Carroll for murder. The indictment came on for trial in the Criminal Court of Baltimore and the petit jury, finding that the homicide was felonious and that Carroll was culpable, convicted him of murder in the second degree. A sentence of 20 years was imposed. Carroll, directly attacking the judgment, seeks to have it set aside.

## I

Carroll claims that the trial court erred in admitting into evidence photographs of gunshot wounds of the victim, which were part of the autopsy record, urging that their prejudicial effect upon the jury was far in excess of their probative value. The grounds of the objection below to their admission were they tended to inflame the jury and were merely cumulative because the autopsy report, admitted without objection, described the wounds. It would appear that the photographs were competent evidence under Code, Art. 22, § 8 (Post-mortem Examiners—Records and Reports). The general rule is that the admission of photographs which are a correct representation of the person, place or object which they purport to represent at the time when the appearance of such person, place or object is relevant to the inquiry in connection with which the photographs are offered is a determination resting within the sound discretion of the trial court. *McLaughlin v. State,* 3 Md. App. 515; *Lamot v. State,* 2 Md. App. 378; *Culver v. State,* 1 Md. App. 406. So whether or not they are inflammatory, whether or not they illustrate and explain relevant matters, whether or not they are of any practical value, and whether or not they are improperly prejudicial are within the exercise of the court's discretion. *Rasnick v. State,* 7 Md. App. 564; *Gray v. State,* 6 Md. App. 677; *Hayes v. State,* 3

Md. App. 4; *Bowyer v. State*, 2 Md. App. 454. We find no abuse of discretion here.

## II

The autopsy report stated the manner of death of Wendell Lee to be "Homicide Subject Shot." It was the opinion of the Medical Examiner:

> "This 42 year old colored male, WENDELL LEE died of massive internal bleeding due to gunshot wound of the right side of the chest involving the right lung. An average size calibre deformed bullet was recovered from the right pleural cavity. A contributory factor to the death of the deceased is another gunshot wound of the left aspect of the upper back involving the soft tissues of the neck."

As to the wound of the right side of the chest there was "no evidence of close range firing on the clothing or skin adjacent to the bullet wound of entrance." As to the wound of the left aspect of the back there was "extensive blackening by soot * * * around the hole of entrance in the jacket and shirt used by the deceased." The deceased had been consuming alcoholic beverages prior to his death, the alcohol in the blood being 0.17%.

Appellant claims the evidence was not sufficient to sustain the conviction.

*Criminal Agency*

Robert Powell, called on behalf of the State, testified that he was working in a "carry-out" shop of which he was a part owner about 2:45 A.M. on 25 January 1969. Lee entered the shop, went to the back of the store, yelled, "If you want me, come in here and get me," and returned to the front of the store. Two men walked in, one of whom was appellant. "When the two men entered the shop, the one that had on the black coat, he went in his coat pocket. When he brought his hand out he had a revolver, a gun in his hand, and he shot the man. When he shot the man,

I fell behind the counter, but I still could observe what was going on. It was several shots. * * * Then they both left the shop, and within sixty seconds, they reentered the shop. And the one that did the shooting, tried to shoot the man again, but his gun clicked. The one that didn't do the shooting, he walked over to the man, and I saw this—and I saw where his legs were, and he yelled, 'Don't shoot him.' And then they both left." [1]

Testifying on his own behalf, appellant said he had snatched the gun from Green. He did not "actually remember shooting" Lee but he said, "I do not deny that I pulled the trigger." He admitted he had the gun in his hand. On cross-examination he said he remembered having the gun and "I assume that I fired." Asked if it was a fair assumption that he fired all three of the shots he replied, "Yes, its possible that I may have fired all three." It was elicited from appellant on direct examination that he went for help when Green fell down the embankment. He told a friend, Sammy McNeal what had happened. "I told him I think that I had shot a man."

This evidence was sufficient for the trial judge to permit the question of the criminal agency of appellant to go to the jury.

### Self-Defense—Provocation

Appellant adduced evidence to show that the homicide was excusable as in his defense and in defense of his friend, Green. But the testimony of Powell, regardless of what had previously occurred outside the shop, if found credible by the jury, tended to negate the claim of appellant that he became engaged in a sudden affray or combat, in the course of which, necessarily or under reasonably apparent necessity, he killed Lee, using no unreasonable or excessive force, to save himself or Green from

---

1. The man who entered the store with appellant was William Green. When they left the store they fled the scene and during the flight Green fell down an embankment, broke his neck, and died. It was the opinion of the Medical Examiner that the death was accidental. Green was not consuming alcohol prior to his death but his blood showed barbiturates 0.40 mg. %.

death or great bodily harm after retreating as far as he could with safety. See *Ware v. State,* 3 Md. App. 62, 65; *Tipton v. State,* 1 Md. App. 556, 560. In the light of Powell's testimony, the question of self-defense *vel non* was clearly for the jury.

Nor do we think that the evidence established the requirements of the "Rule of Provocation." Giving weight to Powell's testimony, as the jury had the right to do, they could properly find that there was not adequate provocation, that the killing was not in the heat of passion, the killing not following any provocation before there had been a reasonable opportunity for passion to cool, and that there was no sufficient causal connection between any provocation, any passion, and the fatal act. See *Whitehead v. State,* 9 Md. App. 7, 10-11.

## Murder in the Second Degree

Evidence tending to show that appellant followed Lee into the shop and shot at him several times from a distance of five to twelve feet, left, immediately returned and attempted to shoot him again but the gun either misfired or all the rounds in it had been expended, for it "clicked", was sufficient in law to establish malice and made the homicide, at the least, murder in the second degree. *Lindsay v. State,* 8 Md. App. 100.

We note that the police found three spent cartridge casings, two inside the shop and one on the step directly outside. They dug a spent cartridge out of the meat case in the shop. Two spent cartridges were recovered from Lee's body by the Medical Examiner. Appellant urges that since it was not shown which bullet wound caused Lee's death nor was it explained precisely how Lee sustained the wound in the back, the evidence would not sustain a verdict of murder in the second degree. We do not agree. It was the opinion of the Medical Examiner that death was caused by the bullet wound in the chest, the wound in the back being a contributory factor. In any event, the jury were entitled to draw rational inferences from the evidence and the weight of the evidence was a matter for them.

We hold that the lower court did not err in denying the motion for judgment of acquittal made at the close of all the evidence. *Williams v. State*, 5 Md. App. 450.

## III

Appellant's third contention involves the instructions to the jury. We find that the instructions as a whole adequately and correctly stated the applicable law. *Shotkosky v. State*, 8 Md. App. 492. The court told the jury that they were the judge of the law and the facts and its instructions were advisory only; it was the function of the jury "alone to pass upon the truth of the testimony as given by the various witnesses, and the weight that you are to give their testimony." It explained the presumption of innocence and the rule of reasonable doubt. It discussed the indictment, containing only one count.[2] It said:

> "You start out generally with the presumption as set by statute, that murder is presumed to be murder in the second degree, and the State has the burden of proving that murder which starts out as murder in the second degree, has arisen to murder in the first degree." [3]

It then explained that it was the burden of the defendant to lower the offense to manslaughter. The court

---

2. The indictment was in the usual form—that Carroll "feloniously, wilfully and deliberately premeditated malice aforethought, did kill and murder" one Wendell Lee. We observe that "kill" as used in the indictment carries its old meaning which is the same as "murder." Many words change meaning from age to age. Thus in the King James Bible the commandment is expressed, "Thou shalt not kill" but the New English Bible says, "You shall not commit murder." The King James translators knew, according to eminent authority, that "kill" at that time meant "murder" and what we mean in normal usage by "kill" today was expressed four centuries ago by "slay".

3. Homicide is the killing of one person by another. In Maryland if the homicide is felonious it is either murder or manslaughter. If it is murder it is either in the first degree or in the second degree. It is in the first degree if it is within certain statutory designations. Code, Art. 27, §§ 407, 408, 409, 410. All other murder is in the second degree. Art. 27, § 411. If the homicide is without malice aforethought, it is manslaughter and not murder. *Whitehead v. State, supra*, at 9-10.

next discussed murder in the first degree and malice, during the course of which it said:

> "Malice may be inferred from the fact of the use of a deadly weapon directed at a vital part of one's body."

For clarity of discussion we designate this as statement (1). The court observed that if the elements of premeditation and willfulness are eliminated but malice is still present, the murder would be in the second degree. It then made what we designate as statement (2):

> "Where there has been an unlawful killing, the intent to take a life with malice aforethought is presumed * * *." [4]

The court stated the law of self-defense in detail and then said:

> "To summarize, all murder is presumed to be murder in the second degree. If you find sufficient evidence of deliberateness and premeditation, you may return a verdict of guilty to murder in the first degree. If you find an unlawful killing without malice aforethought, you may find a verdict of not guilty of murder, but guilty of manslaughter. Hence, you may return one of five possible verdicts in this case."

It set out the five possible verdicts. In concluding the charge it gave the usual caution as to comments and rulings it may have made during the trial, emphasized that it was the jury's duty to determine the facts from the

---

4. The court continued:
"* * * but where the evidence shows that death resulted from gross negligence, or with reckless disregard of another person's life, or merely unlawful conduct, and there was no intention to take life, or that the crime was committed without premeditation but with hot blood and under provocation, the crime would be manslaughter, unless there are mitigating or explanatory circumstances for having done so."

evidence, and explained that the verdict must be unanimous.

The court asked for exceptions at the conclusion of its charge. Defense counsel, who was not the counsel now representing appellant on appeal, excepted to the failure of the court to instruct in accordance with his requested first, fourth, fifth, sixth, seventh and ninth requested "prayers" [5] and then said:

> "* * * I would respectfully except to those portions of the charge wherever you spoke that all murder being presumed as second degree murder, wherein I feel it's misleading to the jury without adding except justifiably excused. It's murder, because it left the jury believing, if there was a murder in fact or killing, in fact, its automatically second degree, when in fact we know there are many circumstances when from a matter of fact death does not mean second degree murder and must be proven beyond a reasonable doubt, and it would be presumed second degree murder."

The court refused to take any action on this exception, feeling that it had "properly instructed the jury on the law."

Although the exception below was as to those portions of the charge in which the court spoke of "all murder being presumed as second degree murder", which he challenged because he felt "it's misleading to the jury", the challenge on appeal is to other portions of the instructions and for another reason. Appellant claims that in stating that malice may be inferred from the fact of the use of a deadly weapon directed at a vital part of the body —statement (1)—and in stating that where there has been an unlawful killing, the intent to take a life with malice aforethought is presumed — statement (2)—the

---

5. The court subsequently did give the substance of the instruction in the fifth request as to presumption of intoxication when the alcohol content of the blood is .15% or greater.

court committed prejudicial error because each statement embodies a "presumption" which is unconstitutional. He considers statement (2) to embody a presumption that "all homicide is murder in the second degree." It seems, however, that what appellant is now challenging and what he challenged below are not the same nor is the reason for the challenge now given the reason for the challenge below. We do not think that the exception below went to statement (1) or statement (2) but rather to the references made in the instructions as to "all murder being presumed as second degree murder.[6] And it is patent that no question of the constitutionality of "presumptions" was tried and decided below. Maryland Rule 756 g is crystal clear in its provision that upon appeal a party assigning error in the instructions may not assign as of right an error unless (1) the particular portion of the instructions given was "distinctly objected to" and (2) the grounds of objection were stated at that time. See Rule 756 f. We feel that appellant may not assign as of right the error claimed in his third contention. See *Iozzi v. State,* 5 Md. App. 415; *Culver v. State,* 1 Md. App. 406. In any event we point out that in *Lindsay v. State, supra,* we held that the inference of malice from the pointing of a deadly weapon at a vital part of the body was constitutional.[7] And although we did not reach the question of the constitutionality of a rebuttable presumption that homicide is murder in the second degree, we have held that instructions concerning the presumption of malice in all homicides, when preceded by instructions on the pre-

---

6. We point out that there is a distinction between a presumption that all murder is in the second degree which is what the court clearly said elsewhere in its charge and which, as we understand appellant's oral argument before us, he felt was proper, and a presumption that all homicide is murder in the second degree.

7. We said, at 109:
"We see no violation of the constitutional rights of an accused for society, in an attempt to achieve maximum protection for human life, to read in the mental elements of malice whenever a defendant, acting without provocation, justification or excuse, could or should have foreseen that the consequences of his behavior might result in death to another person."

sumption of innocence and the State's burden of proving guilt beyond a reasonable doubt were not error. *Johnson v. State,* 4 Md. App. 648; *Leyva v. State,* 2 Md. App. 120.

We have found that appellant may not assign the error in the instructions now claimed as of right for failure to comply with Rules 756 f and g. We do not take cognizance of the alleged error either upon our own motion or upon appellant's suggestion, as we are not persuaded that it was plain error material to his rights in the light of the charge in its entirety in any event.

*Judgment affirmed.*