GERALD DAVIS FULLER *v.* STATE OF MARYLAND

[No. 1027, September Term, 1979.]

*Decided April 16, 1980.*

The cause was argued before LOWE, COUCH and WEANT, JJ.

*Lee Gordon, Assigned Public Defender,* for appellant.

*F. Ford Loker, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Mark P. Cohen, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

On 12 July 1979 a jury in the Criminal Court of Baltimore (Murphy, J.) found the appellant, Gerald Davis Fuller, guilty of the first degree murder of his wife. The appellant's motion for a new trial was denied on 16 August 1979, and four days later he was committed to the custody of the Commissioner of Correction for the balance of his natural life. In noting a timely appeal to this Court, Mr. Fuller requests that we consider two contentions:

I. The trial judge committed reversible error in failing to grant a judgment of acquittal for first degree murder for the reason that the evidence adduced at trial was insufficient to support such a finding.

II. The trial judge abused his discretion in failing to keep prejudicial photographs of the victim's fatal wounds from being introduced as evidence at trial.

I.

—the law—

Initially we note that Mr. Fuller's appellate argument does not challenge the sufficiency of the evidence as to the jury's findings of the *actus reus* of homicide or his criminal agency, rather its focus of attack is much narrower, *i.e.,* whether or not there was sufficient evidence to convince the jury beyond a reasonable doubt that the appellant murdered

his wife wilfully, deliberately, and with premeditation.[1] Stated most precisely, Mr. Fuller insists that we should lay to rest "the notion that the brutality of the murder act may — in and of itself — provide sufficient evidence to convict for first degree murder." Making such a determination would necessitate our rejecting *Kier v. State,* 216 Md. 513, 523, 140 A.2d 896, 900 (1958), wherein the Court of Appeals stated:

> The brutal manner in which the victim was beaten about the face and head with these or other objects indicates a protracted period during which the assault continued. Then the assailant procured or produced a butcher knife which he plunged into her body not once but twice. There was ample evidence to justify the trial court in its conclusion that the action of the appellant was wilful, that it was deliberate, and that it was premeditated.
>
> The court is irresistibly driven to the conclusion that there was sufficient evidence to justify the trial court in arriving at its verdict of murder in the first degree.

The holding in *Kier* is derived from an earlier Court of Appeals decision, *Chisley v. State,* 202 Md. 87, 95 A.2d 577 (1953). There the Court held that

> "[i]n order to justify a conviction of murder in the first degree, . . . the jury must find the actual intent, the fully formed purpose to kill, with so much time for deliberation and premeditation as to convince them, that this purpose is not the immediate offspring of rashness and impetuous temper and that the mind has become fully conscious of its own design."

*Id.* at 106, 95 A.2d at 586, quoting Hochheimer (1904 ed.),

---

1. Md. Ann. Code art. 27, § 407 states: "All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree."

section 347, page 380. The Court, still citing Hochheimer, then indicated that

> [i]t is not necessary that deliberation and premeditation shall have been conceived or have existed for any particular length of time before the killing. Their existence must be judged from the facts of the case. *Webb v. State,* [201 Md. 158, 93 A.2d 80 (1952)]. The Court of Appeals of New York, in *Leighton v. People,* 88 N.Y. 117, 120, put it in this wise: "If, therefore, the killing is not the instant effect of impulse, if there is hesitation or doubt to be overcome, a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder." The same ruling is made in *People v. Majone,* 91 N.Y. 211, 212: "Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. And when the time is sufficient for this, it matters not how brief it is." It is generally established and certainly is necessarily the law of Maryland, where the jury is the judge of the law and the facts, that where there is evidence to go to the jury, whether or not there was malice, wilfullness, deliberation and premeditation must be for the jury to determine. *Warren on Homicide,* Vol. 3, Sec. 307; and *Jones v. State,* 188 Md. 263, 272, 52 A.2d 484 [(1947)]. *Shelton v. State,* [198 Md. 405, 84 A.2d 76 (1951)].

*Chisley,* 202 Md. at 106-07, 95 A.2d at 586. Finally, in ruling that the evidence before the jury was sufficient to sustain a first degree murder conviction, the *Chisley* Court made the following determination at page 108, 95 A.2d at 586-87:

> There was evidence, in our opinion, which the jury could properly consider in determining

whether there was intent to kill and deliberation and premeditation. The shooting was preceded by the discussion, brief as it was, about the ownership of the cigarettes. The jury could find that two or more shots were fired and that there was an appreciable interval between the first shot and the second, or more, and that the second was fired as Contee lay on the ground; the firing of two or more shots in such circumstances has been held by the Courts to be evidence for the jury of deliberation and premeditation. *State v. McNamara,* 116 N.J.L. 497, 184 A. 797, 185 A. 479; *People v. Harris,* 209 N.Y. 70, 102 N.E. 546; *Commonwealth v. Dreher,* 274 Pa. 325, 118 A. 215; and *Brown v. State,* 62 N.J.L. 666, 42 A. 811.

*Chisley* was thereafter cited for the proposition that where there was an interval between the first and final acts constituting the murder, there was sufficient evidence of deliberation and premeditation. *Wilson v. State,* 261 Md. 551, 565, 276 A.2d 214, 221 (1971); *Cummings v. State,* 223 Md. 606, 612, 165 A.2d 886, 889 (1960), *cert. denied,* 366 U.S. 922, 81 S. Ct. 1098, 6 L. Ed. 2d 243 (1961); *Robeson v. State,* 39 Md. App. 365, 381, 386 A.2d 795, 803 (1978), *aff'd on other grounds,* 285 Md. 498, 403 A.2d 1221 (1979).

That *Chisley* continues to stand for the proposition that the interval between the first and final acts constituting murder is sufficient evidence of the mental state necessary to establish murder in the first degree becomes clearer in the light of our recent decision, *Smith v. State,* 41 Md. App. 277, 398 A.2d 426 (1979). In *Smith,* we once more addressed the question of whether or not the evidence was legally sufficient to permit the case to go to the jury on the issue of first degree murder. In the course of his response, Judge Moylan re-examined *Chisley* so that he might answer the following queries:

Do the three adjectives "wilful," "deliberate" and "premeditated" describe three distinct aspects of the mental state we are searching for [*i.e.,* intent to

kill] or are they, as a rhetorical device for purposes of emphasis, simply three synonyms for the same mental state? Do the second and third adjectives add anything whatsoever to the first? Can there be "a specific purpose and design to kill" without "a full and conscious knowledge of the purpose to kill"? How does one have purpose without being conscious of that purpose? To wit, can an act be "wilful" and not "deliberate"? By the same token, does the third adjective add anything to the second? How can one be "deliberate" without having had "time enough to be deliberate"? How can one do a thing (even a mental thing) without having had time to do it? Is the adjectival trinity aught but a literary flourish?

*Id.* at 300, 398 A.2d at 440. The conclusion reached is best summarized by Chief Judge Gilbert's statement in *Brown v. State,* 44 Md. App. 71, 410 A.2d 17 (1979), at page 22: "The trilogy of terms connotes the same general idea — the intention to kill. The use of all three words would seem to us to serve no purpose other than to shroud the intention in an aura of redundancy so as to convey the seriousness of the matter." (Citation omitted).

Because the time lapse between acts is "evidence for the jury of deliberation and premeditation," *Chisley,* 202 Md. at 108, 95 A.2d at 587, it is also evidence for the jury of wilfulness, deliberation, and premeditation, *i.e.,* evidence for the jury of murder in the first degree. *Brown,* 44 Md. App. at 78, 410 A.2d at 22. We are not free to accept Fuller's invitation to abandon Kier. If however, we were at liberty to do so we would, nevertheless reaffirm the principles announced therein.

— the facts —

That the victim, Karen Lee Fuller, was brutally murdered can hardly be disputed. Dr. Thomas Smith, Deputy Chief Medical Examiner for the State of Maryland, testified that Karen Fuller had sustained fifty stab wound injuries.

Unable to establish which particular thrust of the knife precipitated the victim's demise, Dr. Smith stated that "[t]he cause of death was multiple stab wounds." Apart from "the most medically serious" wounds, *i.e.,* those which "damaged the heart and both lungs," there were numerous other "widely distributed" wounds, *e.g.,* "on the top of the head — on the left and right side of the head," "some on the left side of the face," "a few in the front of the neck," "a cluster of approximately nine or ten wounds" "in the back between the shoulder blades," "several on the forearms and the hand regions," and "some even down on the legs."

As was true in Kier, it is obvious that the victim in the instant case was the object of a protracted and brutal assault. Therefore, we also are "irresistibly driven to the conclusion" that there was sufficient evidence to justify the trial judge's refusing to grant a judgment of acquittal for first degree murder.

## II.

As this Court stated in *Meyer v. State,* 43 Md. App. 42ʳ 406 A.2d 427, 437 (1979)

> The admission of photographs is within the discretion of the trial court, and its determination will not be disturbed on appeal unless it clearly abused its discretion in admitting them. *Carroll v. State,* 11 Md. App. 412, 414-15, 274 A.2d 677, 678-79 (1971). *See Rasnick v. State,* 7 Md. App. 564, 569-70, 256 A.2d 543, 546 (1969), *cert. denied,* 400 U.S. 835, 91 S. Ct. 70, 27 L. Ed. 2d 67 (1970); *McLaughlin v. State,* 3 Md. App. 515, 523, 240 A.2d 298, 303 (1967). *See also Clarke v. State,* 238 Md. 11, 207 A.2d 456 (1965).

A review of the record in the case *sub judice* establishes that Judge Murphy did not abuse his discretion in admitting into evidence the autopsy photographs depicting the victim's wounds. In ruling on the photographs's admissibility, he stated: "I think that I would allow them in because this might be of some assistance in determining degree." In the

light of our discussion in section I, we are unable to say that Judge Murphy abused his discretion in the instant case.

*Judgment affirmed.*
*Costs to be paid by appellant.*