REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0077

September Term, 2015

JACOB LEE CHISUM

v.

STATE OF MARYLAND

Graeff,
Friedman,
Moylan, Charles E., Jr.
    (Retired, Specially Assigned),

JJ.

Opinion by Moylan, J.

Filed: February 25, 2016

The appellant, Jacob Lee Chisum, was convicted in the Circuit Court for Wicomico County by Judge W. Newton Jackson, III., sitting without a jury, of attempted second-degree murder, first-degree and second-degree assault, reckless endangerment, carrying a weapon openly, and carrying a concealed weapon. For the attempted second-degree murder, Judge Jackson imposed a sentence of thirty years, with all but fifteen years suspended.

On this appeal, the appellant raises three contentions, each expressly challenging the legal sufficiency of the evidence to support one of the three guilty verdicts. The appellant does not challenge the sufficiency of the evidence to support the convictions for reckless endangerment, first-degree assault, and second-degree assault. The appellant does challenge the legal sufficiency of the evidence to support the convictions for both carrying a weapon openly and carrying a concealed weapon and, most significantly, to support the conviction for attempted second-degree murder. That is the flagship contention of this appeal.

## The Precise Issue of Legal Sufficiency

As we prepare to address that flagship contention, let it be clear that we are not going to indulge the appellant in manufacturing a law school examination hypothetical of error where in the real-life trial before us, no such error occurred. We will require of the appellant, moreover, the same meticulous precision in the framing of his primary contention that he would demand of the trial judge in explaining his verdict. Appellants themselves should not be lax in challenging laxity. The appellant's primary contention is unambiguous:

> "The evidence was insufficient to convict Mr. Chisum of attempted second degree murder."

The issue there framed is unequivocally the legal sufficiency of the evidence to permit a conviction for attempted second-degree murder. What must be found to be sufficient, moreover, is not the ostensible fact-finding of the trial judge, as argued for by the appellant, but the sufficiency of the **evidence** itself.

## The Factual Background, Briefly

The evening of September 27, 2014, was a festive one in Salisbury as William "Dirty" Ayers invited seven or eight of his friends to join him in the shed behind his Mother's home for what he described as some "typical friendly banter among friends that evening with a lot of drinking." As the festivities progressed, he characterized his own condition as "wasted." Among the celebrants were the appellant and the ultimate stabbing victim, Wayne Handy. The "typical friendly banter" turned to the fine points of high couture, as the appellant and Handy clashed over which of the two of them had the "fliest" (loosely translated by Handy as "the best") clothes and shoes.

The host, Ayers, had his back to the disputants when he heard "a whole bunch of ruckus" behind him with Handy suddenly announcing, "Oh, man, he got me." As Ayers turned to look, he saw "blood everywhere" and Handy, bent over, holding his abdomen and bleeding. The appellant was standing in the doorway of the shed, with a knife in his hand.

At that point, the party broke up. Handy, still bleeding, ran across the street. The appellant ran and jumped into his car. Ayers followed the appellant to his car and manifested his displeasure by throwing first a bicycle and then a chair at his troublesome guest. In the

meantime, someone had called the police. Ayers then ran to assist Handy, who was at that point lying in the yard and bleeding.

It was Handy who, as a witness, described how, as the conversation between him and the appellant about clothes and shoes grew more heated, the appellant left the conversation "for a split second" and then came back. Handy heard the "open click of a knife" and instantly felt the pain of being stabbed. There was a single stab wound to the stomach area. Handy was transported to the hospital where he underwent surgery. He had suffered a laceration of the liver. Shortly after fleeing the scene, the appellant was apprehended at the scene of a traffic stop. A search of the car revealed a fixed blade knife in a sheath in the driver's seat pocket.

## The Burden of Production: The 66-Year History of the Legal Sufficiency Test

It behooves us initially to focus on precisely what the appellant's contention about the legal sufficiency of the evidence entails or, more dispositively, on what it does not entail. Our ultimate holding will be framed exclusively in response to the appellant's challenge to the legal sufficiency of the evidence to support the attempted murder verdict. It behooves us to demarcate clearly what an examination of the legal sufficiency of the evidence entails, and what it does not entail. It is a precise contention and not a broad umbrella.

In a jury trial, the scope of the legal sufficiency issue is clear. Maryland Rule of Procedure 4-324 requires an appellate court to review the legal sufficiency of the evidence if, at the close of all of the evidence, a timely motion for a judgment of acquittal has been

made by the defendant. <u>Brooks v. State</u>, 299 Md. 146, 150, 472 A.2d 981 (1984) ("In determining the disposition of a motion for judgment of acquittal ..., the trial court is passing upon the sufficiency of the evidence to sustain a conviction."). Absent such a motion, no review of the legal sufficiency of the evidence is even permitted. As Judge Kenney explained for this Court in <u>Whiting v. State</u>, 160 Md. App. 285, 308, 863 A.2d 1017 (2004):

> "Rule 4-324(a) requires that, as a prerequisite for appellate review of the sufficiency of the evidence, appellant move for a judgment of acquittal, specifying the grounds for the motion."

See also <u>Graham v. State</u>, 325 Md. 398, 416-17, 601 A.2d 131 (1992); <u>Bates v. State</u>, 127 Md. App. 678, 691, 736 A.2d 407 (1999).

When dealing with the issue of legal sufficiency in a jury trial, we are dealing only with the satisfaction of the burden of production. Was the evidence sufficient, as a matter of law, to permit the judge to submit the case to the jury for its decision? We are not at all concerned with how the factfinder arrived at the verdict, the logic or illogic of the factfinder's reasoning, but only with the naked verdict itself. How the factfinding jury rendered its verdict may, to be sure, be a critical issue. We are not for a moment suggesting otherwise. It would be nonetheless an issue separate and distinct from the issue of whether the State has satisfied its burden of production by producing legally sufficient evidence to permit a verdict of guilty.

In the case now before us, we are dealing with a court trial and not with a jury trial. The factfinder was a judge and not a jury of 12 persons whose decisional processes are

forever both beyond our ken and beyond our authority to review. The question becomes one of whether appellate review of the evidence is broader in a bench trial than it is in a jury trial. The reviewing authority is spelled out in Maryland Rule 8-131(c), which provides:

> "When an action has been tried without a jury, the appellate court will review the case on both the law and evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."

(Emphasis supplied).

There is one big and obvious difference between the review of a verdict on the evidence in a jury trial and in a court trial. Such review of a jury's verdict is absolutely contingent on an underlying motion for a judgment of acquittal. Such a review on the evidence of a judge's verdict, on the other hand, is automatic. What remains to be seen is whether there is any further difference between the substance of the respective reviews. The literal wording of Rule 8-131( c) is that "the judgment of the trial court" (the verdict) will not be set aside "on the evidence unless clearly erroneous." (Emphasis supplied). Is the verdict in a bench trial that is not clearly erroneous the same, neither more nor less, than a jury verdict that is supported by legally sufficient evidence? No question could be more basic for an appellate court charged with reviewing criminal convictions.

The absolutely seminal analysis in this regard was made by the five charter members of this Court in the second year of its existence. The monumental opinion of Judge Orth in Williams v. State, 5 Md. App. 450, 452, 247 A.2d 751, cert. denied, 252 Md. 734 (1969), set out to examine "the authority and function of this Court in its review of the sufficiency

-5-

of the evidence in a criminal case." The issue was one of first impression, as the opinion pointed out that there was no authority for an appellate court to review the sufficiency of the evidence in a non-jury case until January 1, 1950 and no authority to review such sufficiency even in a jury case until a constitutional amendment effective as of December 1, 1950. Brooks v. State, 299 Md. 146, 149, 472 A.2d 981 (1984) (Until 1950, the Court of Appeals "had no power to review the legal sufficiency of evidence on appeal of a criminal case tried to a jury."). Then as now, the language authorizing review in a non-jury case referred to a verdict's not being "set aside on the evidence unless clearly erroneous" and the authorizing language in a jury trial referred to "the sufficiency of the evidence to sustain a conviction." 5 Md. App. at 454.

As this Court, then reviewing essentially nothing but criminal cases (hence the word "Special" in its very name), undertook its review of the legal sufficiency of evidence in criminal cases, the inquiry was fundamental.

> "The question arises as to what test is to be applied on appeal in determining the sufficiency of the evidence (1) to sustain a conviction in a non-jury case, and (2) to justify its submission to the jury in a jury case."

5 Md. App. at 456. (Emphasis supplied).

Judge Orth's opinion made it clear that in a jury trial and a court trial alike, we are measuring a verdict against the supporting evidence itself and not looking at what a judge might say in rendering the verdict.

"Once the question of the sufficiency of the evidence is properly before us, we believe that <u>the criteria used to determine the question is the same, be the verdict rendered by the court or a jury</u>."

5 Md. App. at 458-49 (emphasis supplied).

The issue of legal sufficiency is precisely the same under either trial modality. In a court trial just as in a jury trial, the issue is the satisfaction of the burden of production.

"We think that <u>whether the question comes before us as a contention that the trial court was clearly wrong in reaching a verdict of guilty on the evidence or as a contention that the evidence was insufficient in law so as to preclude it from being submitted to the jury</u>, the test is whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. <u>If there was such evidence, the lower court would neither be clearly erroneous, in a trial without a jury</u>, in finding a verdict of guilty, <u>nor in error, in a jury trial</u>, in denying a motion for judgment of acquittal."

5 Md. App. at 459-60 (emphasis supplied).

In <u>Wilson v. State</u>, 261 Md. 551, 276 A.2d 214 (1971), the opinion of this Court in <u>Williams v. State</u> was squarely before the Court of Appeals, as the appellant there, 261 Md. at 563-64, raised the following challenge:

"The appellant advances the proposition that the test to be applied in appellate review of the sufficiency of the evidence in a criminal case has been changed by the decision of the Court of Special Appeals in <u>Williams v. State</u>, 5 Md. App. 450, 247 A.2d 731 (1968)[.]"

Judge Finan's opinion for the Court of Appeals, 261 Md. at 565, found nothing improper in <u>Williams</u> and used it as the standard by which to hold the evidence legally sufficient in that case.

"Applying the test set forth in Williams to the evidence outlined in this opinion, the jury could honestly and justifiably have been convinced beyond a reasonable doubt that the appellant, in firing the final shot (if not the first three), was guilty of the wilful, deliberate, and premeditated murder of Walter 'Kidd' Henderson."

In Barnes v. State, 31 Md. App. 25, 29, 354 A.2d 499 (1976), this Court, relying on Williams, pointed out that in a bench trial, what is automatically before the appellate court for review is the legal sufficiency of the evidence, just as it would upon proper motion be before the Court in a jury trial.

"In a criminal action tried before a jury, appellate review of the sufficiency of the evidence may be had only upon the denial of a motion for judgment of acquittal at the close of all the evidence. ... In a criminal action in which the court is the trier of fact, the appellate court must entertain the issue of the sufficiency of the evidence when presented on appeal even in the absence of a motion for judgment of acquittal below. Williams, 5 Md. App. at 46, n. 10[.]"

(Some internal citations omitted).

This Court has been unwavering in its commitment to that essential identity of the tests for legal sufficiency. In Starke v. Starke, 134 Md. App. 663, 668-69, 761 A.2d 355 (2000), we made it clear that the phrase "clearly erroneous" in Rule 8-131(c) refers only to whether the verdict is supported by legally sufficient evidence and not to peripheral incidents in its rendition.

"Rule 8-131(c) does not apply to evidentiary rulings, even rulings that have a critical influence on the outcome of the case. Neither does Rule 8-131(c) apply to ancillary or intermediate findings of fact (or non-findings of fact), even those that might control, as in this case, whether a presumption of undue influence arising out of a confidential relationship should arise.

"Rule 8-131(c) applies only to verdicts, conferring on an appellate court the authority to review a verdict on the evidence. Historically, no such authority existed in either court trials or jury trials. In a jury trial, however, it effectively existed because a trial judge's legal decision as to whether the evidence was sufficient to permit the case to be submitted to the jury was reviewable as a matter of law. No such review of the sufficiency of the evidence was traditionally available in a court trial, however, because a judge, in his capacity as a legal referee, was not required to make a legal ruling before submitting the case to himself, in his capacity as a fact finder."

(Emphasis supplied).

We reiterate that the ultimate appellate review of the sufficiency of the evidence, if triggered, is precisely the same in a jury trial and in a bench trial alike. In a jury trial, the required trigger is a motion for a judgment of acquittal pursuant to Rule 4-324(a). Absent such a timely motion, the appellant forfeits his right to have the legal sufficiency of the evidence reviewed by the appellate court. In a bench trial, by contrast, the trigger is Rule 8-131(c). After a bench trial, appellate review of the legal sufficiency of the evidence is automatic and does not require a motion by the appellant.

In the most basic of terms, the critical issue, regardless of the trial modality, is whether the State has satisfied its burden of production. The issue of legal sufficiency of the evidence is not concerned with the findings of fact based on the evidence or the adequacy of the factfindings to support a verdict. It is concerned only, at an earlier pre-deliberative stage, with the objective sufficiency of the evidence itself to permit the factfinding even to take place. The burden of production is not concerned with what a factfinder, judge or jury, does with the evidence. It is concerned, in the abstract, with what any judge, or any jury,

anywhere, could have done with the evidence. It is an objective measurement, quantitatively

and qualitatively, of the evidence itself. It is a question of supply and not of execution.[1]

In a criminal case, no issue is more important than whether the State has satisfied its

burden of production. The concern is with production, as a matter of law, and not with

persuasion, as a matter of fact. The appellate assessment of the burden of production is made

by measuring the evidence that has been admitted into the trial objectively and then

determining whether that body of evidence is legally sufficient to permit a verdict of guilty.

In a jury trial, a motion for a judgment of acquittal at the end of the entire case initiates the

examination of the satisfaction of the burden of production. If that burden of production is

not satisfied, the trial judge is wrong, as a matter of law, for denying the motion and for

allowing the case even to go to the jury. In a bench trial, the purpose of Rule 8-131(c) is to

provide, automatically, the same appellate review of whether the evidence satisfied the

---

[1]In State v. Albrecht, 336 Md. 475, 479, 649 A.2d 336 (1994), Judge Raker pointed out that when the issue after a bench trial conviction is the legal sufficiency of the evidence, the question is not what the particular trial judge in that particular case did with the evidence but whether the evidence itself was sufficient to permit "any rational trier of fact" to return a verdict of guilty based on that evidence,

> "In other words, when a sufficiency challenge is made ... the duty of the appellate court is only to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [quoting Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)]."

(Emphasis supplied).

burden of production. If the evidence is not legally sufficient to support a verdict of guilty, the judge's verdict of guilty is ipso facto clearly erroneous. In jury trial and bench trial alike, the burden of production, as a matter of law, must be satisfied.

This is the analysis that must be engaged in when an appellate contention challenges the legal sufficiency of the evidence to support a verdict of guilty. It is not an omnibus challenge or an amorphous challenge covering everything in the near neighborhood. It is a precise challenge to the satisfaction of the burden of production, neither more nor less. Legally sufficient evidence satisfies the burden of production. Legally insufficient evidence does not.

**In a nutshell:** In the appellate review of a criminal conviction, the State's burden of production is the same in a jury trial and in a bench trial. In examining the satisfaction of that burden of production, the test of the legal sufficiency of the evidence to support the conviction is the same in a jury trial and in a bench trial. It was in 1950 that the burden of production became reviewable in both jury trials and bench trials. We are directed to apply that test by a motion for a judgment of acquittal in a jury trial and by Rule 8-131(c) in a bench trial. The test itself, however, is precisely the same.[2]

---

[2]Let us be absolutely clear about what we are not saying. We are not suggesting for a moment that there could not be reversible error in the manner in which a trial judge (or a jury for that matter) renders a verdict or comments upon his own findings of fact in rendering a verdict. There very well could be reversible error, if a contention were properly framed to challenge such error.

(continued...)

## An Argument Outside the Contention

What the appellant is attempting to do in this case is to squeeze under the rubric of a contention challenging the legal sufficiency of the evidence, an argument that goes to something other than the legal sufficiency of the evidence. The appellant appears to have been aware of this gatehouse function of the legal sufficiency issue before factfinding is even permitted to take place. Although not required to do so in a court trial, the appellant, at the close of all of the evidence, nonetheless moved for a judgment of acquittal, which Judge Jackson denied.

-------

[2](...continued)

In this case, as we shall fully explain infra, we hold that the trial judge committed no error in reaching his verdict. We are herein, for educational purposes, nonetheless discussing the necessity for properly framing precise contentions. Even if, purely arguendo, a trial judge made specific findings of fact that would not support a verdict of guilty, that verdict would, of course, be subject to legitimate challenge. Even if a jury, in rendering its verdict, gratuitously blurted out that based upon its specific findings it had rendered its verdict but those findings would not support a guilty verdict, that jury verdict might well be subject to legitimate challenge.

We are simply making the point, as guidance for the proper framing of contentions, that those errors in the rendering of the verdict would be errors other than and different from a challenge to the legal insufficiency of the evidence. They would be errors that do not involve the burden of production. No such contentions have been made however, in this case, and arguments about such hypothetical errors do not come within the legal sufficiency contentions that are in this case.

In this case, the trial judge, in rendering his verdict, did not commit any error. Even if, purely arguendo, he had committed an error in the manner suggested by the appellant, that error, fully reversible if timely preserved and properly the subject of a contention, would represent something other than an error based on the legal insufficiency of the evidence. Our discussion herein is not of error verus non-error. It concerns, rather, the framing of clear and precise contentions versus loose and flaccid contentions that could cover everything.

"[DEFENSE COUNSEL]: Yes, Your Honor. <u>I would like to make a motion for judgment of acquittal</u> as to all counts, <u>most specifically</u> I guess I will address count two, I guess <u>the attempted second degree murder</u>. <u>I don't believe we've heard any evidence regarding a specific intent to kill</u> which is the intent required for attempted first or second degree murder.

"THE COURT: Well, let me cut you off, I'm going to give you all your time obviously to make your motion, but <u>wouldn't thrusting a knife into someone's abdominal region give an inference of some sort of intent to kill</u>?"

(Emphasis supplied).

At that point, the issue of the legal sufficiency of the evidence was already ripe for appellate review. All of the evidence was in and available for measuring. No subsequent trial event could affect that sufficiency, one way or the other. Any subsequent trial event, therefore, would have been irrelevant to the pure issue of legal sufficiency. We now turn that legal sufficiency test to the proof of the <u>mens</u> <u>rea</u> of attempted murder.

### The Permitted Inference of the Intent to Kill

With respect to the evidence of the necessary <u>mens rea</u>, the appellant presents us with a classic problem from Introduction to Criminal Homicide 101. Even with an <u>actus reus</u> of a bullet to the heart or a knife to the abdomen, how do we deduce the <u>mens rea</u> that propelled the bullet or wielded the knife? Moylan, <u>Criminal Homicide Law</u> (MICPEL, 2002), §3.2, "Proving the Intent to Kill," p. 33, set out this basic introductory question and its now unequivocally accepted answer:

"Because the specific intent to kill lies hidden in the killer's brain, ... its proof is sometimes problematic. It may be proved directly, if the killer proclaims his purpose even as he kills or if he acknowledges his purpose afterward. It may be proved indirectly, by evidence of bad blood between the

-13-

killer and the victim, by an earlier expression of an intent to kill, by a strong motive, by profiting from the victim's death, by an elaborate murderous scheme or plan, or by infinite varieties and combinations of circumstantial evidence. <u>First and foremost in the ranks of proof, however, is the permitted inference of an intent to kill from the directing of a deadly weapon at a vital part of the victim's anatomy</u>."

(Emphasis supplied).

The seminal Maryland case recognizing such inferential proof of the necessary <u>mens</u> <u>rea</u> is the opinion for this Court by Judge Orth in <u>Lindsay v. State</u>, 8 Md. App. 100, 105, 258 A.2d 960 (1969):

"<u>If a man voluntarily and willfully does an act, the natural and probable consequences of which is to cause another's death, an intent to kill may be inferred from the doing of the act</u>. So, it has been consistently held, that in the absence of excuse, justification, or a mitigating circumstance, <u>malice is inferred from the use of a deadly weapon directed at a vital part of the body</u>."

(Emphasis supplied; footnotes omitted).

The validity of that rationale is embedded deep in common law history. The ground-breaking value of the <u>Lindsay</u> opinion was in bringing Maryland's procedural and evidentiary vocabulary constitutionally up-to-date by characterizing the rationale as the use of a "permitted inference" rather than continuing to use the anachronistic term of "factual presumption," with all kinds of gnarled analytical problems, no longer troubling since we reformed our evidentiary vocabulary in the mid-1970's.

In <u>Evans v. State</u>, 28 Md. App. 640, 349 A.2d 300 (1975), <u>affirmed</u>, 278 Md. 197, 362 A.2d 629 (1976), this Court undertook an intensive survey of homicide law. With respect to this permitted inference of murderous intent, we observed, 28 Md. App. at 704:

"The only inference of any significance in our homicide law is the permitted inference of an intent to kill or of an intent to do grievous bodily harm from the directing of a deadly weapon at a vital part of the human anatomy or from some similar use of deadly force."

(Emphasis supplied).

In Smith v. State, 41 Md. App. 277, 281, 398 A.2d 426 (1979), we again referred to inferential proof of the intent to kill:

"In this particular case, the variety of intent we are dealing with is the specific intent to kill. In this regard, we have evidence that the appellant fired a sawed-off shotgun at point blank range into the chest of victim. This represents, quite clearly, the directing of a dangerous and deadly weapon at a vital part of the human anatomy. It is well established that this gives rise to a permitted inference of the intent to kill."

(Emphasis supplied). See also, Baker v. State, 332 Md. 542, 548, 632 A.2d 783 (1993); State v. Rainer, 326 Md. 582, 591-93, 606 A.2d 265 (1993); State v. Earp, 319 Md. 156, 167, 571 A.2d 1227 (1990); Buck v. State, 181 Md. App. 585, 642-43, 956 A.2d 884 (2008).

**The Narrow Mens Rea of Attempted Murder**

We fully agree with the appellant that the crime of attempted second-degree murder (as, indeed, the crimes of attempted first-degree murder and attempted voluntary manslaughter) require proof of a specific intent to kill. That is, indeed, the teaching of Earp v. State, 76 Md. App. 433, 545 A.2d 698 (1988) and State v. Earp, 319 Md. 156, 571 A.2d 1227 (1990). In Moylan, Criminal Homicide, §3.15, "Attempted Murder in the Second Degree," pp. 67-68, this nuance of homicidal mens rea was fully discussed:

-15-

"In <u>Earp v. State</u> and <u>State v. Earp</u> the conviction was for attempted murder in the second degree. The trial judge, in a court trial, seemed to have found that Earp did not harbor a specific intent to kill but only a specific intent to inflict grievous bodily harm. In reversing the conviction for the Court of Special Appeals, Judge Robert M. Bell pointed out that the <u>mens</u> <u>rea</u> of the inchoate crime of attempted murder is not as broad as the <u>mens</u> <u>rea</u> for consummated murder:

> "An indispensable element of attempted murder, be it first or second degree , and the separate crime of assault with intent to murder, is the intent to murder. And although by application of the aggravating factors prescribed in Maryland Code Ann. art. §§407-410, an accused may be convicted of murder upon proof of an intent other than the specific intent to kill. <u>Glenn</u>, 68 Md. App. at 388, when the victim does not die, a necessary ingredient of the intent to murder is a specific intent to kill.

"(Citations omitted). With specific reference to the inadequacy of the intent to commit grievous bodily harm to sustain a conviction for the inchoate crime, the Court of Special Appeals concluded:

> "A conviction for attempted second degree murder may not be sustained upon proof that the accused intended only to commit grievous bodily harm; a conviction for attempted second degree murder may only be sustained if the perpetrator is found to have harbored the intent to kill his victim.

> "In affirming that holding following a grant of <u>certiorari</u> at the petition of the State, the opinion of Judge McAuliffe for the Court of Appeals pointed out that the common law attempt may attend any of the three grades of criminal homicide. 'One may be guilty of an attempted murder in the first or second degree or of an attempted voluntary manslaughter.' For any of them, however, the required <u>mens</u> <u>rea</u> is that of a specific intent to kill:

> > "The specific intent required to prove an attempt is the intent to commit a particular crime, in this case murder. Accordingly, the required specific intent in the crime of attempted murder is a specific intent to murder."

(Footnotes omitted).

Just as the predicate fact of the use of a deadly weapon directed at a vital part of the human anatomy gives rise to a permitted inference of an intent to kill, it has been recognized as also giving rise to the permitted inference of an intent to inflict grievous bodily harm, a second of the murderous <u>mentes</u> <u>reae</u>. The same predicate fact, however, could give rise to an infinite number of other permitted inferences not necessarily involving homicide law – the intent to disfigure a rival before the beauty pageant, the intent to disable the opposing quarterback before the championship game, the intent to hospitalize a delegate before a key legislative vote. The predicate fact, notwithstanding giving rise to a treasure trove of permitted inferences, might, on the other hand, not persuade a jury to draw any inference at all. There is no requirement, moreover, that for one permitted inference to prevail, all other possible inferences must be negated or disproved.

The flaw in the appellant's argument is that the availability of other permitted inferences does not in any way negate or compromise the validity and the legal sufficiency of the permitted inference of the intent to kill. It need not be the only possible inference in order to be, as it is, routinely recognized as legally sufficient proof of the intent to kill. Although the contention before us challenges exclusively the legal sufficiency of the State's evidence to prove the <u>mens</u> <u>rea</u> of an intent to kill, it does not even argue how the evidence was legally insufficient.

## An Argument, Even If Not A Contention

Turning his focus away from the legal sufficiency of the evidence, which clearly would have permitted a finding of an intent to kill, the appellant argues that Judge Jackson expressly found that the appellant did not intend to kill the victim and that that finding of fact would preclude a conviction for attempted murder. In his reply brief, the appellant asserts:

> "[W]hat the trial court *actually found* was that 'there clearly was an intent on the part of Mr. Chisum to cause serious physical injury.' This is an implicit finding that there was *not* an intent on the part of Mr. Chisum to kill. Given the finding of no intent to kill, the evidence is insufficient to sustain a conviction for attempted second degree murder."

(Italics in original, underlining supplied; transcript citation omitted).

As we will discuss more fully infra, our reading of the transcript in full context is that Judge Jackson made no such finding that there was no intent to kill. What the appellant is attempting to do is to deduce a negative finding from the absence of an affirmative finding. Such a finding, however, does not logically follow. In rendering his verdict, Judge Jackson did, to be sure, talk about the serious nature of the stab wound, but he was distinguishing it from a less lethal slashing of the arms or leg.

> "[THE COURT]: Because it's the abdominal region, there clearly was an intent on the part of Mr. Chisum to cause serious physical injury that could easily have lead to the death of Mr. Handy. It wasn't as if he slashed at his arms or slashed at his leg, he went straight to the main part of the body where there are numerous organs. As the prosecutor pointed out, he [Mr. Handy], easily could have died. The Defendant is guilty under all counts."

-18-

The flaw in the appellant's reasoning goes deeper. He treats the two murderous _mentes_ _reae_ as if they are mutually exclusive. Sometimes they are. More frequently, however, they are compatibly overlapping or duplicative. Before, under more sophisticated modern analysis, the intent to inflict grievous bodily harm was recognized as an independent _mens_ _rea_ of its own in the case of a consummated homicide, the intent to inflict grievous bodily harm was recognized as a factual predicate from which a jury was permitted to infer an intent to kill. The same predicate moreover, such as the pointing of a deadly weapon at a vital part of the human anatomy, could give rise to a permitted inference of either of these two murderous intents or to both. The two intents are not mutually exclusive and the mention of how a knife wound can inflict grievous bodily harm is not an affirmative finding that there was no intent to kill. There was no such finding.

The appellant relies heavily on Selby v. State, 361 Md. 319, 761 A.2d 335 (2000), but that case is of no avail to him. The defendant there had been convicted of voluntary manslaughter. The Court of Appeals held that the intent to kill was a required element of voluntary manslaughter. It further held that the intent to inflict grievous bodily harm was not a sufficient _mens_ _rea_. In that case, however, unlike the one at bar, there was an affirmative and express finding by the trial judge that the defendant did not have an intent to kill his victim. There was no such finding in the present case.

### Decisional Rationale Need Not Be Articulated

The appellant also seems to take the trial court to task for not formally explaining its rationale as it rendered its verdict. In his brief, the appellant complains:

> "The trial court **never** stated that Mr. Chisum **actually intended to kill the victim**. The single act of stabbing the victim cannot serve as a substitute for the requisite specific intent to kill."

(Emphasis in original).

There is, however, no such requirement. In a court trial, the rendering of the verdict is governed by Maryland Rule 4-328, which provides:

> "The District Court or a circuit court sitting without a jury shall render a verdict upon the facts and the law. <u>Although not required, the court may state the grounds for its decision either in open court or by written memorandum</u>."

(Emphasis supplied).

The court is not required to explain its reasoning in arriving at the verdict. The verdict is permitted to speak for itself. As the Court of Appeals pointed out in <u>Pugh v. State</u>, 271 Md. 701, 707, 319 A.2d 542 (1974):

> "Nothing more is required under the rule for a 'verdict' other than a deliberate pronouncement of 'guilty' or 'not guilty' in light of the facts and the law."

Even more descriptive of the random nature of the comment in this case that the appellant would seize upon as holy writ is the observation of Judge Sally Adkins for the Court in <u>Allen v. State</u>, 157 Md. App. 177, 189, 850 A.2d 365 (2004), as we dismissed a similar contention.

> "Cases in Maryland and elsewhere have recognized the difference between a 'slip of the tongue' or preliminary comments, on the one hand, and an actual resolution of the sufficiency issue on the other."

## The Enduring Value of The Preservation Requirement

Our disinclination to let the appellant take advantage of what was, at the very most, an ambiguity is fortified by the fact that the appellant did nothing to resolve that possible ambiguity. An overview of the progress of this trial yields the conclusion that the subtle difference between the intent to kill and the intent to inflict grievous bodily harm was never an issue in this case. Nobody was testifying with respect to it. Nobody was arguing about it. As a practical reality, nobody was even thinking about it. This issue is one of sheer appellate opportunism.

When Judge Jackson was rendering his verdict, therefore, his comments were nothing more than gratuitous and casual observations. He was not delicately treading sensitive ground between two nuanced <u>mentes</u> <u>reae</u> as if walking through a doctrinal minefield and we will not assess his off-hand comments or inadvertent phrasing as if he were. An arcane distinction between overlapping <u>mentes</u> <u>reae</u> was simply not a matter demanding the close attention of the court. No one had any occasion to be on high alert for sensitive distinctions.

If anything Judge Jackson said or did not say was even arguably ambiguous, moreover, the appellant did absolutely nothing to clarify such possible ambiguity. Had defense counsel raised the question, the judge would have made it clear within 20 seconds that he found an intent to kill. That was clear from his remark as he earlier denied the appellant's motion for a judgment of acquittal. This is the core reason for the preservation requirement, to permit the judge to clarify what can readily be clarified if he is given the

opportunity to do so. Quite aside from preservation, however, we see no error even if the present complaint had been preserved.

## Carrying a Weapon, Both Openly and Concealed

We assure the appellant that he was not convicted of openly carrying a concealed weapon. That would be a conviction worthy of Yogi Berra and an affront to Eldridge v. State, 329 Md. 307, 312-15, 619 A.2d 531 (1993). The two charges and the two convictions, in dramatic contrast to Eldridge v. State, were in this case definitely sequential. In any event, the appellant was not sentenced on either conviction and the would-be problem totally evanesces.

The evidence showed that the appellant and the ultimate stabbing victim, Handy, were engaged in a verbal disagreement inside the shed. The appellant then left, went to his car, obtained the knife, returned to the shed, and stabbed Handy. As William Ayers turned to see what was happening and observed Handy bleeding and doubled over, he saw the appellant standing in the doorway of the shed with the knife in his hand. The appellant then walked back to his car with the knife. Were the issue not moot, we would hold that this evidence was legally sufficient to support the verdict for openly carrying a weapon. See Harrod v. State, 65 Md. App. 128, 140, 499 A.2d 959 (1985). The time period for this open carrying offense was immediately before, during, and immediately after the stabbing.

When 20 minutes later, the police arrested the appellant and searched his car, they found the knife concealed in the vehicle. This concealed carrying occurred an appreciable

time after the stabbing and an appreciable distance from the scene of the stabbing. The difference between contemporaneity and sequentiality is heavily fact-specific. Our _arguendo_ holding on the concealed weapon charge would have been in full agreement with the concession made by defense counsel in closing argument, "I understand under the facts that have been presented [that] there was a weapon located in the vehicle. I think I would have to submit on the evidence as to the concealed deadly weapon charge. There was a knife concealed in his vehicle so I will submit to that."

We fully agree. In terms of 1) openly carrying a weapon and 2) carrying a concealed weapon, a defendant cannot do both at the same time. He may, however, do each at a different time, as the appellant did in this case. If he had been sentenced for these offenses (he was not), the sentences would not have been redundant.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**