*Zamere D. Purnell v. State of Maryland*, No. 355, September Term 2019.

**CRIMINAL LAW > REVIEW; WEIGHT OF EVIDENCE IN GENERAL**

In deciding the issue of legal sufficiency of evidence to sustain a conviction, we are dealing only with the satisfaction of the burden of production

**CRIMINAL LAW > TRIAL; PROVINCE OF COURT AND JURY IN GENERAL**

When reviewing the legal sufficiency of evidence to sustain a conviction, we are not concerned with what a factfinder did with the evidence. Rather, we are concerned with what a factfinder could have done with the evidence.

**HOMICIDE > FIRST DEGREE, CAPITAL, OR AGGRAVATED MURDER; DELIBERATION AND PREMEDITATION**

The number of stab wounds to a victim, without more, can constitute legally sufficient evidence to establish premeditation.

**HOMICIDE > DELIBERATION AND PREMEDITATION**

In addition to the number of wounds inflicted, evidence of the intensity of the wounds and the brutal manner in which the wounds were inflicted may also provide sufficient evidence of deliberation and premeditation.

**HOMICIDE > DELIBERATION AND PREMEDITATION**

To establish the deliberate and premeditated elements of first-degree murder, whether a murder defendant acted out of "anger or impulse" is irrelevant, so long as the defendant had sufficient time to reflect on his or her deadly actions.

**HOMICIDE > HOMICIDE IN COMMISSION OF OR WITH INTENT TO COMMIT OTHER UNLAWFUL ACT; MURDER; PREDICATE OFFENSES OR CONDUCT; PARTICULAR OFFENSES AND CONDUCT**

A murder committed in the perpetration of or an attempt to perpetrate robbery is murder in the first-degree.  Crim. Law § 2-201(a)(4)(ix).

**HOMICIDE > PREDICATE OFFENSES OR CONDUCT**

In order to sustain a conviction for felony-murder, the intent to commit the underlying felony must exist prior to or concurrent with the performance of the act causing the death of the victim.  Accordingly, an afterthought felony will not suffice as a predicate for felony murder.

**HOMICIDE > PREDICATE OFFENSES OR CONDUCT; DANGEROUSNESS OF OFFENSE IN GENERAL**

The purpose underlying the modern felony-murder rule is one of deterrence; the rule is intended to deter dangerous conduct by punishing as a first degree murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill.

**HOMICIDE > PREDICATE OFFENSES OR CONDUCT; CAUSAL RELATIONSHIP BETWEEN OFFENSE AND DEATH**

Where a defendant's intent to commit robbery places a victim in a position of defending his person, child, and home, his or her felonious intent to commit the robbery is precisely the type of dangerous conduct the felony-murder rule seeks to deter.

**HOMICIDE > PREDICATE OFFENSES OR CONDUCT**

Where a defendant kills another after entering that victim's home to commit a robbery, the fact that the defendant ultimately stole less than intended or something other than intended does not place that homicide outside the ambit of the felony-murder rule by virtue of the afterthought-felony exception.

**HOMICIDE > PREDICATE OFFENSES OR CONDUCT**

There is no requirement that the State indict and convict upon the underlying felony to sustain a felony-murder prosecution.

**HOMICIDE > PREDICATE OFFENSES OR CONDUCT**

The felony-murder rule applies to killings committed in the perpetration of or an *attempt* to perpetrate the enumerated felonies under Crim. Law § 2-201(a)(4).

**HOMICIDE > PREDICATE OFFENSES OR CONDUCT**

Even assuming *arguendo* that Appellant's completed robbery was an afterthought, Appellant's intention to rob Decedent of some other item upon entering Decedent's home would constitute an attempted robbery, thus providing an independent basis to support Appellant's felony-murder conviction.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 355

September Term, 2019
_____

ZAMERE DASHAWN PURNELL

v.

STATE OF MARYLAND
_____

Reed,
Friedman,
Gould,

JJ.*
_____

Opinion by Reed, J.
_____

Filed: May 27, 2021

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

* Leahy, J., did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8-605.1.

This case comes as an appeal from a bench trial in which Zamere Purnell ("Appellant") was found guilty of first-degree murder, robbery, and other related offenses. The Circuit Court decided Appellant's first-degree murder conviction on two independent grounds: (1) the murder was willful, deliberate, and premeditated first-degree murder under § 2-201(a)(1) of the Criminal Law Article of the Annotated Code of Maryland ("Crim. Law"); and (2) Appellant committed the murder during the perpetration of an enumerated felony set out in Crim. Law § 2-201(a)(4)(i-xii). Following his conviction for first-degree murder, Appellant timely filed a notice of appeal challenging the sufficiency of the evidence presented against him at trial. This appeal followed.

In bringing his appeal, Appellant presents one question[1] for appellate review which we have rephrased for clarity:

I.      Was the evidence presented against Appellant at trial sufficient to sustain a conviction for first-degree murder under § 2-201(a)(1) or § 2-201(a)(4) of the Maryland Criminal Code?

For the following reasons, we affirm the decision of the Circuit Court.

**FACTUAL & PROCEDURAL BACKGROUND**

On the morning of March 17, 2018, Pierre Louis ("Decedent") was found dead on his bedroom floor. Decedent's body was first discovered by his brother-in-law, Mr. Lewis, who was stopping by Decedent's home to prepare Decedent's juvenile son for church. Mr. Lewis testified that Decedent's son was in his bed, in a neighboring room, when Mr. Lewis discovered Decedent's body. Further, Mr. Lewis testified that when he visited Decedent's

---

[1]     In his brief, Appellant posed the following question for review: "Is the evidence sufficient to sustain Mr. Purnell's conviction for first degree murder?

home the previous day, Decedent's room was in proper order.  However, when Mr. Lewis discovered Decedent's body, he noted that everything in the room was on the ground as if there had been a fight. Mr. Lewis also testified that the room emanated a strong smell of Clorox.

Police arrived on the scene that same morning.  After clearing the scene, police observed Decedent on the floor with a mini fridge partially resting on his head. Additionally, police observed a dresser tipped over onto the bed. The bed was wet, discolored, and exuded a strong smell of Clorox. Police also observed several bloody footprints which tracked from the bedroom to the bathroom, the bathroom to the kitchen, and continued into another bathroom.

At the scene, police collected the victim's clothing consisting of a t-shirt and boxer shorts. The t-shirt displayed small slits in the fabric. A crime scene technician who was on the scene testified that the two dressers in the room did not appear disturbed or disheveled, aside from the partial protrusion of the drawers in one dresser, which was found tipped over on the bed. The technician further testified that she recalled police discovering a "substantial amount of money" in Decedent's bedroom.

Thereafter, police canvassed the neighborhood and discovered a dirt path with shoeprints – consistent with those present at the crime scene – facing towards Appellant's home. A resident of the neighborhood provided police with a cell phone he discovered on a dirt path near Appellant's home. That phone was later determined to belong to Decedent.

During their investigation, police interviewed Kenneth Bussey ("Mr. Bussey"), who later testified that he was a mentor to Appellant.  Mr. Bussey testified that he encountered

2

Appellant on March 17, 2018, at which time he noted an injury on Appellant's hand. Mr. Bussey also told police that during his encounter with Appellant, Appellant stated: "I fucked up . . . . I was going to rob this dude and he took a knife out." At trial, Mr. Bussey stated: "like somebody tried to hurt him and he defend [himself]. . . . He said a man, a man tried to stab him, out in the house a man tried to stab me."

According to the medical examiner for the case, Decedent died of 22 sharp force injuries – one to the head, 18 to the torso, and three to the upper extremities – and the manner of death was homicide. Ultimately, the State indicted Appellant, charging Appellant with first-degree murder, robbery, and other related offenses not relevant to this appeal. Appellant pleaded not guilty to the crimes charged and the case proceeded to a bench trial at the Appellant's request.

At trial, the court made several findings of fact which neither party now appears to dispute. First, as a result of the encounter between Appellant and Decedent, Appellant received one wound to the hand; and Decedent suffered 22 stab wounds, as described by the examiner. Second, the evidence did not tend to establish that Appellant entered Decedent's home with a weapon. Instead, it was more likely that Decedent produced a knife to defend his child, his property, and his person. Third, Mr. Bussey's testimony was reliable[2] insofar as it demonstrated Appellant's intent to rob Decedent upon entering

---

[2] In assessing Mr. Bussey's reliability as a witness, the Circuit Court explained:

> I credit the testimony that was given by Mr. Bussey as it relates to the intent of [Appellant] in this matter. The statement was made shortly after the events in question to a person I infer that [Appellant] trusted, that he did not have a reason to testify in a manner unfavorable to [Appellant], and, in fact, my

3

Decedent's home. Fourth, after killing Decedent, Appellant removed Decedent's cellphone from the scene, and either purposely or inadvertently dropped the cellphone on the dirt path where it was later discovered.

Based on these findings, the Circuit Court inferred several facts relevant to the crimes charged. Based on the single injury to Appellant's hand, along with the substantial number of stab wounds to Decedent, the Circuit Court stated:

> [W]hile [Appellant] would like me to infer that there was a fight, it appears to me that [Decedent] was disarmed very early in the encounter, the attempted robbery, and it appears further that [Decedent], despite…being unarmed from that point thereafter, attempted to protect himself and his small child, as well as his personal belongings, and I infer that the stabbings were inflicted by [Decedent]'s failure to submit.
>
> . . . .
>
> The evidence does not suggest that there was any impediment to [Appellant]'s ability to remove himself from the situation.

Additionally, based on the testimony of Mr. Bussey, and Decedent's cell phone being removed from the scene, the Circuit Court stated:

> When [Decedent] was sufficiently submissive and/or injured so that he could no longer defend himself, his child, and his belongings, [Appellant], rather than pursuing his original plan to remove whatever it was that he removed, it's very hard for me to infer, but his own testimony was that he went in for a robbery and so I'm inferring it was something other than simply a cell phone. But he removed the phone from [Decedent].

observation of him was that he was trying to do as little damage as possible to Appellant in his trial testimony.

4

The Court continued by relating the established facts and inferences to the charges in the case. First, on the charge of theft the Circuit Court continued:

> And while it may be that he removed the phone with the intent to prevent [Decedent] was[sic] making a phone call for help, it was the property of [Decedent], it was taken by force or threat of force, and was taken against the will and without the consent of the owner of the property, and it constituted a robbery. And a theft.

Next, discussing the murder charges against Appellant, the Circuit Court stated:

> In terms of what that evidence establishes for purposes of guilt or innocence, as it relates to first degree murder, it appears to me that the [Appellant]'s encounter with [Decedent] was not justified because it was a robbery, and, therefore, the crime of first degree felony murder would have been established by the evidence that I credit beyond a reasonable doubt. Furthermore, it appears to me that the State has sufficiently shown the necessary willfulness, deliberation, and premeditation by virtue of the number of times that [Decedent] was stabbed, and given the absence of any injuries to the [Appellant] beyond the initial wound to his hand, to show that he has committed the crime of first degree premeditated murder. And second degree murder, which would be a lesser-included offense.

Thus, the Circuit Court found Appellant guilty of first-degree murder under the theory of felony-murder, and under the theory that the murder was willful, deliberate, and premeditated. Appellant timely filed a notice of appeal, challenging the Circuit Court's decision. This appeal followed.

**Standard of Review**

We first note that "[w]hen dealing with the issue of legal sufficiency in a jury trial, we are dealing only with the satisfaction of the burden of production." *Chisum v. State*, 227 Md. App. 118, 125 (2016). Importantly, "[i]n examining the satisfaction of that burden of production, the test of the legal sufficiency of the evidence to support the conviction is the same in a jury trial and in a bench trial." *Id*. at 131. In either case, "'the relevant

5

question is whether, after viewing the evidence in the light most favorable to the [State], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Williams v. State*, 329 Md. 1, 15 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307 at 319 (1979)). Moreover, because this is a challenge to the *legal* sufficiency of the evidence, we review the sufficiency of the evidence *de novo*. *Wilder v. State*, 191 Md. App. 319 (2010). When reviewing the legal sufficiency of evidence to sustain a verdict, we are "not concerned with what a factfinder… d[id] with the evidence." *Chisum*, 227 Md. App. at 130. Instead, we are concerned with what a factfinder "could have done with the evidence." *Id*. Accordingly, we will assess the evidence presented against Appellant at trial in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of first-degree murder based on that evidence.

**DISCUSSION**

On appeal, we are asked to review the Circuit Court finding that the evidence at trial was sufficient to sustain a conviction against Appellant for first-degree murder. Appellant's conviction for first-degree murder will be sustained if we find that the evidence supports a finding that Appellant's killing of Decedent: (1) was willful, deliberate, and premeditated under Crim. Law § 2-201(a)(1); or (2) was committed in the perpetration of or an attempt to perpetrate an enumerated felony under Crim. Law § 2-201(a)(4)(i-xii). We turn first to Appellant's contention that the evidence was insufficient to support a finding that Appellant's killing of Decedent was willful, deliberate, and premeditated.

I.       **Willful, Deliberate, and Premeditated Murder**

## A. Parties' Contentions

Appellant first contends that the evidence presented at trial failed to demonstrate that Appellant's killing of Decedent was willful, deliberate, and premeditated. Appellant argues instead that the evidence suggests Appellant acted in "imperfect self-defense" by "overzealously defending himself" in response to Decedent's own attempt to defend his person, child, and property. Appellant further urges that his actions were "rash and reflexive" responses motivated by "the will to live," and fueled by the "adrenaline" of the moment. Accordingly, Appellant contends that such rash and reflexive action belies the requisite *mens rea* required to establish a conviction for first-degree murder under Crim. Law § 2-201(a)(1). Moreover, Appellant argues that the Circuit Court relied solely on the number of stab wounds to satisfy the elements – willful, deliberate, and premeditated – of first-degree murder. In doing so, Appellant contends that the Circuit Court conflated the intent to kill (i.e., willfulness) with the more demanding *mens rea* requirements of deliberation and premeditation. Appellant notes that the evidence of intent "may support a conviction for second-degree murder, but certainly not first-degree premeditated murder."

In response, the State contends that Appellant's view ignores the weight of the physical evidence. The State contradicts the claim that the number of stab wounds alone provided the basis for finding deliberation and premeditation. Instead, the State argues that Appellant's "motive for being in [Decedent]'s home, the obvious struggle that occurred, and the nature of Louis's injuries was sufficient evidence to permit a rational trier of fact to find that Purnell struck the blows with premeditation." The State argues that the single defensive wound to Appellant's hand, contrasted with the 22 stab wounds predominately

7

grouped near Decedent's vital areas, demonstrates that Appellant made a conscious decision to kill Decedent after disarming him. Further, the State urges that the stark contrast in wounds resulting from the struggle evinces a lengthy encounter, during which Appellant had ample time to remove himself from any perceived threat posed by Decedent. Accordingly, the State asserts that Appellant had ample opportunities to forgo his killing of Decedent notwithstanding his potential act in self-defense at the outset of the encounter.

**B. Analysis**

Generally, to establish that a murder was willful, deliberate, and premeditated, the State must independently satisfy each *mens rea* requirement beyond a reasonable doubt. *See Evans v. State*, 28 Md. App. 640 (1975) ("It is the well-settled law of Maryland that to prove murder in the first degree, the State must demonstrate beyond a reasonable doubt 'that the killing was wilful, deliberate, and premeditated.'") (quoting *Wilson v. State*, 261 Md. 551, 564 (1971)). In *Tichnell v. State*, the Court of Appeals expounded each element required to establish the requisite *mens rea* for first-degree murder under Crim. Law § 2-201(a)(1):

> For a killing to be "wilful" there must be a specific purpose and intent to kill; to be "deliberate" there must be a full and conscious knowledge of the purpose to kill; and to be "premeditated" the design to kill must have preceded the killing by an appreciable length of time, that is, time enough to be deliberate. It is unnecessary that the deliberation or premeditation shall have existed for any particular length of time. Their existence is discerned from the facts of the case. If the killing results from a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder.

287 Md. 695, 717-18 (1980) (internal citations omitted).  In his brief, Appellant concedes that the evidence is legally sufficient to show that the killing was willful.[3]  Accordingly, we focus our analysis on the legal sufficiency of the evidence to establish that the killing was deliberate and premeditated.

We first address Appellant's contention that the number of stab wounds alone is insufficient to establish deliberation or premeditation.  While it is true that establishing the existence of deliberation and premeditation involves a fact intensive inquiry unique to the facts and circumstances of a case, it is wholly incorrect to assert that the number of stab wounds to a victim is never enough, on its own, to satisfy the State's burden of production for first-degree premeditated murder.

The Court of Appeals has unequivocally stated that the number of stab wounds to a victim, without more, can constitute legally sufficient evidence to establish premeditation. *See Colvin-el v. State*, 332 Md. 144, 183 (1993) ("In law, twenty-eight stab wounds is sufficient evidence to find premeditation.").  However, it does not necessarily follow that the number of stab wounds will *always* be legally sufficient to establish premeditation.  For example, an excessive number of stab wounds to a victim may be insufficient when viewed with other evidence that a defendant was defending against deadly force at every point during an encounter.  In such a case, a defendant could argue that each subsequent act of stabbing was necessary to defend against deadly force, rendering premeditation and

---

[3]     Appellant's brief stated: "the trial court erred in finding Mr. Purnell guilty of first degree premeditated murder because there is insufficient evidence of premeditation and deliberation."

deliberation untenable. In the present case, Appellant attempts a similar argument. However, the facts of this case do not support that argument. The physical evidence shows a single wound to Appellant's hand, contrasted against the 22 stab wounds predominately grouped in Decedent's vital areas. This stark contrast belies the inference that Appellant was defending himself throughout the encounter. In fact, when viewed in a light most favorable to the State, the number of wounds to Decedent may indeed be solely sufficient to establish premeditation. Regardless, the number of wounds was not the sole evidence presented.

In addition to the number of wounds inflicted, evidence of the intensity of the wounds and the brutal manner in which the wounds were inflicted may also provide sufficient evidence of deliberation and premeditation. *See Kier v. State*, 216 Md. 513, 523 (1958); *see also Ellison v. State*, 65 Md. App. 321, 350 (1985) (quoting *Kier* to confirm that evidence of "multiple injuries and their intensity" provide "adequate evidence of premeditation"). In *Kier v. State*, the Court of Appeals assessed the sufficiency of evidence to sustain a first-degree premeditated murder conviction where a victim was stabbed twice after a protracted struggle. 216 Md. 513. The evidence showed that the victim struck the perpetrator after finding the perpetrator in her home. *Id*. at 518. A struggle ensued in which the perpetrator beat the victim over the face, in the back of the head, and then ultimately stabbed the victim twice in vital areas. *Id*. At trial, the defendant in *Kier* argued that the killing was a result of the intense struggle, during which he did not have time to deliberate or premeditate the killing. The Court of Appeals rejected Kier's argument:

10

The brutal manner in which the victim was beaten about the face and head with these or other objects indicates a protracted period during which the assault continued. Then the assailant procured or produced a butcher knife which he plunged into her body not once but twice. There was ample evidence to justify the trial court in its conclusion that the action of the appellant was wilful, that it was deliberate, and that it was premeditated.

*Id*. at 523.

In the case *sub judice*, a rational trier of fact could have found that Appellant had ample opportunity to end his encounter with Decedent based on the stark contrast in injuries to each party. While Appellant would like us to assume that he was in constant fear for his life throughout the encounter – that is not what the evidence reveals. The evidence, when viewed in the light most favorable to the State, shows that Appellant likely disarmed Decedent early in the encounter. This is assuming that it was Decedent who, in fact, produced the knife. Under Appellant's version of the incident, Appellant admits that the knife he used to effectuate the killing was taken from Decedent during the encounter. At the very least, the moment when Appellant disarmed Decedent he was no longer under any threat of imminent deadly harm. Moreover, the single wound to Appellant could lead a rational trier of fact to conclude that Appellant disarmed Decedent at the outset of the encounter, rendering Decedent unable to defend himself thereafter. From there, a rational trier of fact could reasonably conclude that the Appellant made a conscious choice to continue his assault and did so by targeting an array of Decedent's vital areas.

Appellant urges that even if he did make a conscious choice to kill Decedent, Decedent's resistance aroused Appellant's mental state to the point that Appellant was no longer capable of deliberation or premeditation. Thus, the question remains whether such

11

a conscious choice, executed through many independently fatal blows, is enough to establish premeditation and deliberation in the mind of any rational trier of fact. On this question, the Court of Appeals has offered salient guidance:

> Although it is true that a murder committed solely on impulse—the "immediate offspring of rashness and impetuous temper"—is not one committed with deliberation and premeditation, the law does not require that deliberation and premeditation be the product of clear and rational thought; it may well result from anger or impulse. The test for first degree murder is whether there was the deliberation and premeditation—sufficient time to reflect—not the quality or rationality of the reflection or whether it may have been emotionally based.

*Mitchell v. State*, 363 Md. 130, 149 (2001). Whether Appellant was acting out of "anger or impulse" is irrelevant, so long as he had "sufficient time to reflect" on his deadly actions.

In this case, a rational trier of fact could have found that Appellant had ample time to reflect on his actions at multiple junctures in the encounter. A rational trier of fact could conclude that Appellant had time to reflect on his actions well before inflicting the numerous fatal stab wounds to Decedent. Accordingly, we hold that the evidence presented against Appellant, including the number of stab wounds, the brutality and intensity of the stab wounds, and the attendant circumstances of the encounter, could support a rational trier of fact in finding that the murder was willful, deliberate, and premeditated.

## II. Felony Murder

### A. Parties' Contentions

Appellant further contends that the evidence presented at trial was not legally sufficient to support a finding of first-degree felony murder under Crim. Law § 2-201(a)(4)(i-xii). Appellant bases this contention on the proposition that the underlying

12

felony (robbery) was committed as an afterthought to his deadly encounter with Decedent. Appellant argues that he did not form the intent to steal Decedent's cell phone until after killing Decedent. Appellant does not appear to dispute the evidence which shows that he entered Decedent's home with the intent to rob Decedent. Instead, Appellant asserts that the robbery of the cell phone was the underlying felony, under which the Circuit Court convicted Appellant for felony murder. From there, Appellant contends that because his conviction for felony murder must be supported by the intent to commit the underlying felony at or before the killing, the Circuit Court's conviction for felony murder was "clearly erroneous." At this point in Appellant's argument, Appellant attempts to convert a legal sufficiency challenge to "an omnibus challenge or an amorphous challenge covering everything in the near neighborhood."[4] *See Chisum*, 227 Md. App. at 131. We briefly reiterate that review of sufficiency of evidence is concerned with what a rational trier of fact could have done with the evidence. It is not a challenge to a perceived error by a fact finder made in reaching its ultimate determination. This is another way of saying that "we are measuring a verdict against the supporting evidence itself and not looking at what a

---

[4] Appellant curiously cites a *Chisum* footnote for the contention that "[e]ven if… a trial judge made specific findings of fact that would not support a verdict of guilty, that verdict would, of course, be subject to legitimate challenge." *Id*. at 131 n.2. However, Appellant fails to mention that the footnote goes on to say that "those errors in the rendering of the verdict would be errors other than and different from a challenge to the legal insufficiency of the evidence." *Id*. Indeed, the entire purpose of the footnote was to explain that a challenge based on legal insufficiency of evidence is not concerned with what a fact finder *does* with the evidence, it is concerned with what it *could have done* with the evidence. *Id*. at 130. In the present case, Appellant presented one question on appeal: "Is the evidence sufficient to sustain Mr. Purnell's conviction for first degree murder?" Accordingly, Appellant cannot append a challenge contesting the Circuit Court's method in reaching its verdict to his legally distinct challenge based on sufficiency of the evidence.

13

judge might say in rendering the verdict." *Id*. at 127. Accordingly, any perceived error in the Circuit Court's application of the facts to the law is outside the purview of this appeal. Likewise, we are not constrained by the Circuit Court's legal determinations based on the underlying facts. Thus, we continue to assess whether any rational trier of fact could have found that Appellant killed Decedent during the commission or attempted commission of a felony specified under Crim. Law § 2-201(a)(4)(i- xii).

The State responds by contesting Appellant's suggestion that he did not possess the intent to rob Decedent at or before the time of the killing. In support of this contention, the State points to Appellant's statement: "I was going to rob this dude and he took a knife out." The State argues that this statement, based on credible witness testimony, demonstrates that Appellant had the clear intention to rob Decedent at or before the time of the killing. Accordingly, the State contends that Appellant's intent to rob Decedent is not defeated by Appellant's subsequent decision to limit the scope of his robbery to Appellant's cell phone.

### B. Analysis

A murder "committed in the perpetration of or an attempt to perpetrate…robbery" is murder in the first-degree. Crim. Law § 2-201(a)(4)(ix). We have defined robbery as "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear." *Thomas v. State*, 128 Md. App. 274, 299 (1999). The parties agree that Appellant committed robbery following his murder of Decedent.

Appellant urges, however, that his robbery of Decedent's cell phone was an

afterthought robbery exempt from the felony-murder rule. "In order to sustain a conviction for felony-murder, the intent to commit the underlying felony must exist prior to or concurrent with the performance of the act causing the death of the victim." *State v. Allen*, 387 Md. 389, 402 (2005). "Accordingly, an 'afterthought felony will not suffice as a predicate for felony-murder.'" *Morris v. State*, 192 Md. App. 1, 34 (2010) (quoting *Allen*, 387 Md. at 402).

In *State v. Allen*, the Court of Appeals established the afterthought felony exception to the felony-murder rule. 387 Md. 389. In *Allen*, the defendant killed his victim after a protracted struggle, and subsequently stole the victim's vehicle. At trial, the defendant testified that he did not initially intend to steal the vehicle and did so only to facilitate his escape from the scene. *Id*. at 393. The defendant subsequently flagged down a motorist, who drove the defendant to a fire station and contacted the police to explain what happened. *Id*. at 392-93. The Court of Appeals held that the defendant could not be convicted for felony murder if his intent to commit the underlying felony (car robbery) arose after he committed the killing. *Id*. at 405. The Court of Appeals reasoned that allowing an afterthought robbery to serve as a predicate felony for felony murder would be inconsistent with the felony-murder rule's primary purpose:

> The purpose underlying the modern felony-murder rule is one of deterrence; the rule is intended to deter dangerous conduct by punishing as a first degree murder a homicide resulting from dangerous conduct in the perpetration of a felony, even if the defendant did not intend to kill.

15

*Id.* at 398. Thus, the Court of Appeals reasoned that permitting an afterthought robbery to serve as a predicate offense would be inconsistent with the felony-murder rule's intended purpose: to deter dangerous conduct that may result in murder.

In the present case, Appellant's conduct leading to the murder is precisely the sort of conduct the felony-murder rule seeks to deter. The evidence establishes that Appellant's encounter with Decedent was the direct result of Appellant's intent to commit robbery. It was Appellant's dangerous conduct in perpetrating the robbery that placed Decedent in a position of defending his person, child, and home. Absent Appellant's decision to rob Decedent, Decedent might still be alive today. This is the sort of dangerous conduct that the felony-murder rule was designed to deter.

Based on the evidence, a rational trier of fact could conclude that Appellant intended to commit robbery when he killed Decedent. A rational trier of fact could reach this conclusion notwithstanding the contention that Appellant ultimately stole less than he intended after the homicide occurred. The evidence does not establish what Appellant intended to steal when he entered Decedent's home. Accordingly, a rational trier of fact could conclude that Decedent's cell phone was among the items Appellant intended to steal. If so, the robbery would have been consummated.

Moreover, where, as here, a defendant kills another after entering that victim's home to commit a robbery, the fact that the defendant ultimately stole less than intended or something other than intended does not place that homicide outside the ambit of the felony-murder rule by virtue of the afterthought-felony exception. Such an application of the afterthought-felony exception would frustrate the purpose underlying the felony-murder

16

rule. Thus, based on the evidence a rational trier of fact could have found that the felony-murder rule's predicate felony requirement was satisfied based on Appellant's robbery of Decedent's cell phone.

While our analysis could end here, we feel compelled to raise *sua sponte* the possibility of attempted robbery as the predicate felony. Notably, Appellant was not charged with attempted robbery – presumably because the ultimate robbery was clearly established. However, "[t]here is no requirement that the State indict and convict upon the underlying felony to sustain a felony-murder prosecution." *McMillan v. State*, 181 Md. App. 298 at 351 (2012). Even if a trier of fact found the completed robbery (cell phone) to be an afterthought, attempted robbery could nonetheless serve as the predicate felony. "The fact that an attempted robbery and a robbery took place at approximately the same time and in the same place does not prevent them from being separate crimes." *Dyson v. Warden, Md. Penitentiary*, 1 Md. App. 469 at 473 (1967). In the case at bar, Appellant insists that his robbery of the cell phone was an afterthought; but Appellant does not counter the claim that he was in Decedent's home to effectuate a robbery.

Even assuming *arguendo* that Appellant's completed robbery was an afterthought, Appellant's intention to rob Decedent of some other item upon entering Decedent's home would nonetheless constitute an attempted robbery. "Violence to a person with an intent to steal and the larceny not consummated is not robbery but attempted robbery." *Cooper v. State*, 14 Md. App. 106, 117 (1972). If Appellant formed his intent to steal the cell phone after killing Decedent, then his intention during and before the killing was to effectuate the robbery that compelled him to enter Decedent's home. Under this version of events,

17

Appellant committed "[v]iolence to a person with an intent to steal[,]" but failed to consummate the robbery he initially intended. *Id*. That is attempted robbery. Importantly, the felony-murder rule applies to killings "committed in the perpetration of or an *attempt* to perpetrate" the enumerated felonies under Crim. Law § 2-201(a)(4). (Emphasis added).

We are mindful that, under *Allen*, an afterthought robbery cannot support a conviction for felony murder. 387 Md. at 402. However, *Allen*'s afterthought holding is not violated where, as here, the intent to rob existed before the murder. Moreover, the fact that the intended robbery was not consummated does not preclude the attempted robbery from supporting a felony-murder conviction. *See* Crim. Law § 2-201(a)(4)(ix) ("A murder is in the first degree if it is committed in the perpetration of *or an attempt to* perpetrate . . . robbery . . . ."). Accordingly, even if a rational trier of fact believed that the consummated robbery was an afterthought, they could nonetheless find Appellant guilty of felony murder based on Appellant's attempted robbery.

## CONCLUSION

The evidence against Appellant was sufficient to sustain a conviction for first-degree murder under Crim. Law § 2-201(a)(1) or § 2-201(a)(4). A rational trier of fact could have found that the number, nature, and intensity of the stab wounds Appellant inflicted on Decedent were sufficient to show that Appellant had ample time to consider his actions (deliberate and premeditated) and made a conscious (willful) decision to murder Decedent. A rational trier of fact could also have found that Appellant killed Decedent during the commission of a robbery. Moreover, even if a rational trier of fact found that

18

the consummated robbery was an afterthought robbery, they could have found that Appellant killed decedent during an attempted robbery.

Accordingly, we hold that the State presented sufficient evidence to sustain Appellant's conviction for first-degree murder under both a theory of premeditated murder and felony-murder.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**